**William RALPH**

**v.**

**Vernon PEPERSACK, Warden, Maryland State Penitentiary.**

**Civ. No. 13693.**

United States District Court
D. Maryland.

July 1, 1963.

See also 203 F.Supp. 752.

Edward L. Genn, Silver Spring, Md., for petitioner.

Thomas B. Finan, Atty. Gen. of Maryland, and Robert F. Sweeney, Asst. Atty. Gen., Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

Ralph was convicted of rape and sentenced to death by three Judges, sitting without a jury, in the Circuit Court for Montgomery County on January 18, 1961. On appeal from that conviction he argued one proposition—that the extrajudicial confession admitted in evidence over objection was not his free and voluntary act: (1) because he had been questioned over a long period of time, (2) because the confession was procured as the result of an inducement; and (3) because the confession had been obtained as the result of physical violence on the part of the police. The Court of Appeals considered each of these points, decided them against the defendant, and affirmed the judgment. Ralph v. State, 226 Md. 480, 174 A.2d 163. The Supreme Court denied certiorari. Ralph v. Maryland, 369 U.S. 813, 82 S.Ct. 689, 7 L.Ed.2d 613.

Ralph thereupon filed the pending petition in this Court, contending:

"a) The said confession was obtained by Federal officers, subject to Federal law, in violation of such law and the Federal Rules of Criminal Procedure, the said confession being the result of improper conduct by and a working arrangement between the said Federal officers and the State Police Officers for the State of Maryland, all in violation of your petitioner's constitutional rights under the due process clause of the Fifth Amendment.

"b) The said confession extracted from your petitioner was as a result of improper actions of the Federal officers involved and was involuntary and was obtained in violation of your petitioner's constitutional rights under the due process clause of the Fifth Amendment.

"c) The said restraint and detention is further unlawful in that evidence, including a confession, was obtained as a result of an illegal arrest, search and seizure, all in violation of your petitioner's constitutional rights under the Fourth and Fifth Amendments.

"d) Said detention and restraint is further unlawful in that your petitioner is now informed and verily believes that the items of evidence introduced at trial, particularly certain articles of clothing, were not obtained from petitioner's automobile, as the officers stated, but were obtained at his home in viola-

tion of your petitioner's constitutional rights under the Fourth Amendment, and the false testimony with respect to which deprived petitioner of a fair trial in further violation of his constitutional rights under the Fifth Amendment.

"e) The said restraint and detention is further unlawful, in that as a result of an unreasonable and unnecessary delay by Federal police officials in bringing petitioner before a committing Magistrate, Judge, or Commissioner to be advised of his rights and the charges against him, a confession was extracted from your petitioner in violation of his constitutional rights under the Fifth and Sixth Amendments and under Rule 5(a) of the Federal Rules of Criminal Procedure." [1]

The Attorney General of Maryland, representing respondent, sought dismissal of the petition on the ground that it was premature, since petitioner had not exhausted his state remedies, particularly those under the Post Conviction Procedure Act, Art. 27, §§ 645A–645J, Anno.Code of Maryland. After a hearing on the motion to dismiss, this Court filed an opinion and order staying further proceedings herein so that petitioner might file in the appropriate state court a proceeding under the PCPA. Ralph v. Pepersack, D.C., 203 F.Supp. 752.

Ralph did file such a petition, which was denied by the Circuit Court for Montgomery County. An application for leave to appeal was denied by the Court of Appeals of Maryland. Ralph v. Warden, 230 Md. 616, 185 A.2d 366. The Circuit Court granted the State's motion to dismiss the petition under the PCPA, saying that applicant's petition did not show any reasons for granting relief which had not been previously litigated or waived in prior proceedings, and that it appeared from the record that no constitutional right had been violated as alleged. The Court of Appeals held that none of the points raised by petitioner could be considered in the PCPA proceeding, because all of them had either (a) been fully litigated on the original appeal or (b) waived by not having been timely raised. No findings of historical facts were made by the state courts. [2]

The proceedings under the pending petition have, therefore, been reopened, witnesses produced by counsel for Ralph and by the State have been heard, and the transcript of the proceedings at the original trial has been read and considered.

On all the evidence, this Court makes the following

## Findings of Fact

On March 21, 1960, the Montgomery County, Maryland, Police Department received a report of a breaking, entry, rape

---

1. At the oral argument on respondent's motion to dismiss, counsel for petitioner stated: (1) that petitioner is relying on his rights under the Fourteenth Amendment and under the Fourth and Fifth Amendments as incorporated in the Fourteenth; (2) that he is relying in part upon what he calls the "reverse silver platter" doctrine, citing Rea v. United States, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233; (3) that he did not intend to argue under d), supra, that the State's Attorney knowingly offered any false testimony, and (4) that his principal contention under e) is that the alleged violation of the rule in Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, by the Federal officers prevents the use of the confession obtained by them, not that the Mallory rule is directly applicable to state proceedings.

2. It appears, therefore, that Ralph's earlier suggestion that a proceeding under the PCPA would be futile was justified in this case. It should be noted, however, that the decision of the Court of Appeals of Maryland was rendered before the decision of the Supreme Court in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. The Maryland Court will no doubt reconsider its waiver rule, at least insofar as Federal Constitutional rights are concerned, in the light of Fay v. Noia and other recent Supreme Court decisions.

and sodomy in Kensington, as a result of which they sent a telegraphic message known as a "lookout" to the Metropolitan Police of Washington, D. C., as well as to Maryland police authorities. The lookout read as follows:

"PD Montgomery County, Rockville, Md. 3–31–60 * * * Burglary – Rape – Sodomy * * * Wanted for the above which occurred approximately 0230 hours date at 11003 Drum Ave. Kensington Md. the following * * * LOF C–M–25–40–5–10–155 very thick lips muscular chest close cropped kinky hair wearing a zipper jacket possibly leather. Modus operandi * * * Subject tried the front door at 0015 date Victim heard no further disturbance However turned on all lights and retired to an upstairs bedroom for the night Assailant then entered the garage through a partially open door then entered the basement through an unlocked door where he pulled the fuse box to the house power and obtained a tire iron He then went out to the rear door of the house and gained entry by forcing the door with the tire iron once in the house he went to the victim's upstairs bedroom He then shined a flashlight on the victim a–w–f 41 stating 'Don't make any noise lady or I'll kill you and the boy' He then committed the above offenses A vehicle foreign to the area and observed between 2200 hours 3–20–60 and 0100 hours date was a 1956 Oldsmobile green body and white top registration unknown Warrant will be issued Will extradite Auth PD Montgomery County Rockville Md."

Three days later, on March 24, the Montgomery County Police received a report of another entry, assault and attempted rape, this time in Chevy Chase, as a result of which they issued two lookouts, one of which is set out in note 3 below; the other read as follows:

"Inter PD Montgomery Co. Rockville, Md. 3–5–60 C–144 * * * Burglary * * * Assault * * * Attempted Rape * * * LOF a C–M–28–32–5/8–5/10–165/170. Med. Brown compl thick lips, thin mustache, short kinky black hair, stocky build, barrel chested, wearing a white 'T' shirt /4"x6"/ piece torn out/gray trousers and possibly sneakers. Method of travel unknown * * * wanted for offenses which occurred at 3308 Shepherd St., Chevy Chase, Md., at approx. 11.25 PM 3–24–60. Any infor. pls. advise Warrants will be issued Will extradite Auth. PD Montgomery Co. Rockville, Md. F1 KGR 11.45 PM F1 TT 11.50 P.M."

These lookouts were also sent to the Metropolitan police, who were especially interested because the locations men-

---

3. "C–144 File 5 PD Montgomery County, Rockville, Md. 3–25–60 To * * * GA Burglary * * * Assault * * * Attempted Rape * * * LOF a * * * C–M–28/32–5/8–5/10–165/170. Medium brown complexion, thick lips, thin mustache, short kinky black hair, stocky build, barrel chested. Wearing a white 'T' shirt /4" x 6" piece torn out/gray trousers and possibly sneakers. Method of travel unknown. Wanted for the above offenses which occurred at 3308 Shepherd Street, Chevy Chase, Md., at approx. 11.25 PM, 3–24–60. Modus Operandi * * * Subject entered house through french doors at rear, went through dining room into living room, turned lamps off, went through hall leaving hall light on and went direct to bedroom where victim was sleeping and turned light in bedroom off. Victim awoke to find subject kneeling on bed with hand on her throat and was told 'Don't make a sound or I'll kill you.' Victim screamed and struggled. Subject started out door. When victim tried to get to telephone subject returned to bedroom and dragged her out into the hall. Daughter of victim came from her bedroom and attacked subject tearing a piece off his 'tee' shirt approx. 4" by 6". Subject knocked daughter aside and departed through the rooms used in entering house. Attention is invited to * * * C–121, File 5, MCPD, 3–21–60. Similar Description. Any info please advise. Warrants will be issued. Will extradite."

tioned were near the District. The look-outs were read at roll-calls, particularly at the midnight roll-call on March 25–26 at the 8th Precinct in northwest Washington, adjacent to Montgomery County.

At 2:55 a.m. on March 26, the 8th Precinct received a report of a woman screaming in a wooded area in the rear of 2756 Macomb Street, N.W. Four minutes later a radio patrol car, having received the message and proceeded to the 2700 block Macomb Street, found only one person in sight, a Negro male (Ralph) standing outside a green and white Oldsmobile adjusting his clothing. He fitted closely the description of the man wanted by Montgomery County. The officers arrested Ralph and immediately sent a call for the Sex Squad, who, upon arrival, directed that Ralph be taken to the precinct station. They found Maryland license plates in the car, and non-tax paid whiskey in the trunk of the car. Although Ralph said that he did not frequent Montgomery County, he had on his person two Montgomery County traffic summonses. It appears from the testimony of one of the officers that Ralph was arrested for investigation of the Maryland crimes.

Upon Ralph's arrival at the precinct station shortly before 3:30 a.m., the Montgomery County police were promptly notified. At 3:35 a. m. the Metropolitan police questioned Ralph for 45 minutes about his activities that night and about the non-tax paid liquor in the car. Ralph said he had been stealing wine and beer from his employer and trading it for whiskey.

Officer Whalen, who was in charge of the Montgomery County investigation, was not then on duty, but Sergeant Leahey of the Montgomery County police came to the 8th Precinct Station at 3:50 a. m., saw Ralph, but did not question him, and thereafter arranged for Mrs. Peck, the victim of the rape in Kensington, to come to Metropolitan Police Headquarters later in the morning. Ralph was questioned off and on between 3:30 and 5:30 a. m. about his Washington activities, and was then transferred to Headquarters and given something to eat.

Meanwhile, Mrs. Robertson had reported to the Metropolitan Police that she had been attacked and raped in the 2700 block Macomb Street just before 3:00 a. m. She came to Headquarters, and at about 9:30 a. m., after Ralph had been questioned about the attack on her for two hours, Ralph confessed to having raped Mrs. Robertson.

Mrs. Peck arrived at Headquarters at about 10:50 a. m. Until that time Ralph had not been questioned about the attack on Mrs. Peck. She was unable to identify Ralph, but between 10:50 and 11:20 a. m. Ralph orally admitted to Officer Whalen of the Montgomery County Police and Officer Eichelberger of the Metropolitan Police that he had raped Mrs. Peck. Immediately thereafter, about 11:30 a. m., Ralph was taken before a committing magistrate in Washington and a hearing was held at 12:15 p. m.

This Court finds, as the State Courts found at the original trial and on appeal therefrom, see 226 Md. 480, 174 A.2d 163, that no force or other improper means were used to obtain the confessions; indeed it is not seriously contended here that the confessions were coerced except by the fact that Ralph had been arrested without a warrant and was held from 3:00 a. m. until 11:30 a. m. without being taken before a committing magistrate.

### *Discussion*

Under the facts found by this Court, stated above, when the Metropolitan Police arrested Ralph they had probable cause to believe that he had committed the Montgomery County felonies, and therefore had the right to arrest him without a warrant.[4] He and his car fitted the descriptions contained

---

4. In making this decision the Court has considered the rules laid down in Wong

Sun v. United States, 371 U.S. 471, 87 S. Ct. 407, 9 L.Ed.2d 441; Henry v. United

in the Montgomery County lookouts. The hour, the location, the screams heard four minutes before, the fact that he was the only person on the street and was adjusting his clothes, supported the conclusion of the officers that they had probable cause to make the arrest. The Maryland license plates in the car and the Montgomery County traffic summonses, coupled with his evasive answers with respect to why he was in that neighborhood at that hour and about his visits to Montgomery County, supported their decision to hold him.[5]

Since the Metropolitan Police had probable cause to arrest Ralph for the Montgomery County offenses, it is unnecessary to consider: (a) whether they had reasonable grounds to believe that a felony had just been committed in Washington, evidenced by the screams, and to arrest Ralph in connection with that offense; or (b) whether, if the evidence at hand were not sufficient to justify an arrest for either the known Maryland felonies or the suspected Washington felony, it should nevertheless be held that the police were justified in stopping Ralph, questioning him on the spot, searching the car, and then taking him to the precinct station for further questioning. The latter problem has been discussed recently in articles and judicial opinions, but has not been authoritatively decided. See Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513; Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037; Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134; Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1668; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; Edwards v. State, 196 Md. 233, 76 A.2d 132; Price v. State, 227 Md. 28, 175 A.2d 11; Symposium on Police Detention and Arrest Privileges, 51 Journal of Criminal Law, Criminology and Police Science, p. 385 et seq., especially Remington, p. 386 et seq., and Wilson, p. 395 et seq.

Having arrested Ralph with probable cause, the Metropolitan Police had the right and duty to hold him until the Montgomery County Police could with reasonable dispatch bring Mrs. Peck to Washington to view him, could with reasonable dispatch interview him with respect to the two Maryland felonies, and could decide whether they wished him held for extradition. These actions were taken with reasonable dispatch. The Metropolitan Police took Ralph before a magistrate immediately after the interview in which Mrs. Peck and the Montgomery County Police participated.

Counsel for Ralph argues that under Rule 5(a), F.R.Crim.P., as interpreted in Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, Ralph should have been taken before a magistrate immediately after he was arrested and brought to the precinct station. He argues that the Mallory rule applies in this case because Ralph was arrested by federal officers, even though he was arrested for a state offense and was tried and convicted in a state court, where Rule 5(a), F.R.Crim.P., does not apply. This proposition has been referred to as the "reverse silver platter" doctrine, and has not been decided by the Supreme Court, although it was discussed in some of the opinions in Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390. It is not necessary to decide whether Rule 5(a), F.R.Crim.P., and the decisions interpreting and applying it in Federal cases apply in this case, because even under the Federal rule there was no unnecessary delay. The Mallory rule does not require an immediate hearing without any questioning. When applicable, it does require that one who has been

---

States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134; Peisner v. United States, 4 Cir., 311 F.2d 94, 104, and other applicable cases.

5. The non-tax paid whiskey in the trunk of the car was an additional reason for taking him to the precinct station.

arrested be taken before a committing magistrate without unnecessary delay. What is necessary delay depends upon the facts of the particular case. In this case, as noted above, it was reasonable and necessary for the police to hold Ralph in custody until the Montgomery County victim and police could come to Washington, see Ralph and interview him.

Moreover, shortly after Ralph was brought to the precinct station, Mrs. Robertson reported the attack on her, just before the time and near the spot where Ralph was arrested by the officers who had come to the area as a result of the report of screaming. It was clearly proper for the police to hold Ralph until Mrs. Robertson could come to the station, give a more complete report, and view Ralph, and until reasonable and necessary questioning thereafter could be promptly completed.

As Justice Goldberg, speaking for the Supreme Court, said in Haynes v. Washington, 373 U.S. 503, 514, 83 S.Ct. 1336, 1344: "Of course, detection and solution of crime is, at best, a difficult and arduous task requiring determination and persistence on the part of all responsible officers charged with the duty of law enforcement. And, certainly, we do not mean to suggest that all interrogation of witnesses and suspects is impermissible. Such questioning is undoubtedly an essential tool in effective law enforcement. The line between proper and permissible police conduct and techniques and methods offensive to due process is, at best, a difficult one to draw, particularly in cases such as this where it is necessary to make fine judgments as to the effect of psychologically coercive pressures and inducements on the mind and will of an accused."

As both the State Courts and this Court have found, on two separate records, the police used no coercive pressures or inducements to secure a con-

fession in this case.[6] No claim of denial of the right to call friends or counsel has been or could properly be made on the facts shown by the evidence.

This Court finds and holds that no constitutional right was violated by Ralph's arrest or his subsequent detention and interrogation.

The writ of habeas corpus is hereby denied, and petitioner is remanded to the custody of respondent.

6. Cf. Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513; Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037; Blackburn v. Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242; Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325.