**William RALPH, Appellant,**

**v.**

**WARDEN, MARYLAND PENITEN-TIARY, Appellee.**

**No. 13757.**

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1970.

Decided Dec. 11, 1970.

Rehearing En Banc Denied March 1, 1971.

Haynsworth, Chief Judge, concurred in denial of rehearing en banc and filed opinion.

Boreman, Circuit Judge, dissented from denial of rehearing en banc and

filed opinion in which Albert V. Bryan, Circuit Judge, joined.

Edward L. Genn, Washington, D. C. (court-assigned) for appellant.

Alfred J. O'Ferrall, III, Asst. Atty. Gen. of Md., (Francis B. Burch, Atty. Gen. of Md., and Edward F. Borgerding, Asst. Atty. Gen., on brief) for appellee.

Anthony G. Amsterdam, Stanford, Cal., (Jack Greenberg, James M. Nabrit, III, Michael Meltsner and Jack Himmelstein, New York City, on brief) for the NAACP Legal Defense and Education Fund, Inc., and The National Office for the Rights of the Indigent, amici curiae.

Before HAYNSWORTH, Chief Judge, SOBELOFF, and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

William Ralph, convicted of rape in 1961 by a three-judge court sitting without a jury, was sentenced to death. He appeals the district court's dismissal of his habeas corpus petition in which he challenged the constitutionality of his death sentence and the adequacy of the trial court's finding that his confession was voluntary. We hold that the Eighth Amendment's prohibition against cruel and unusual punishment forbids Ralph's execution for rape since his victim's life was neither taken nor endangered, but we find no merit in Ralph's assignment of error concerning his confession.

## I.

In 1964, Ralph claimed on appeal that the death penalty violated the Eighth Amendment. He had not made that contention in the district court, and we dismissed his argument for lack of sufficient precedential support.[1] Subse-

---

1. Ralph v. Pepersack, 335 F.2d 128, 141 (4th Cir. 1964). Ralph's conviction was affirmed, Ralph v. State, 226 Md. 480, 174 A.2d 163 (1961), cert. denied, 369 U.S. 813, 82 S.Ct. 689, 7 L.Ed.2d 613 (1962). The Circuit Court for Montgomery County has denied four petitions for post-conviction relief: Misc.Pet. 2593, aff'd, Ralph v. Warden, 230 Md. 616, 185 A.2d 366 (1962); Misc.Pet. 3171; Misc. Pet. 3354, aff'd, Ralph v. Warden, 245 Md. 74, 224 A.2d 851 (1966); and Misc. Pet. 3869, leave to appeal denied, Ralph v. Warden, 250 Md. 672, 245 A.2d 592 (1968), cert. denied, 394 U.S. 1002, 89 S.Ct. 1598, 22 L.Ed.2d 780 (1969). Four previous habeas corpus petitions have been denied: Ralph v. Pepersack, 203 F. Supp. 752 (D.Md.1962); Ralph v. Peper-

sack, 218 F.Supp. 932 (D.Md.1963), aff'd, 335 F.2d 128 (4th Cir. 1964), cert. denied, 380 U.S. 925, 85 S.Ct. 907, 13 L.Ed. 2d 811 (1965); Ralph v. Brough, 248 F.Supp. 334 (D.Md.1965); Ralph v. Warden, 264 F.Supp. 528 (D.Md.), aff'd, No. 11,549 (4th Cir. 1967) (mem. dec.), cert. denied, 390 U.S. 992, 88 S.Ct. 1188, 19 L.Ed.2d 1301 (1968).

Nowhere on the record before us does it appear that the Eighth Amendment contention has been submitted to the state courts. The State, however, has not urged dismissal for lack of exhaustion of state remedies. On the contrary, in its answer to Ralph's habeas corpus petition in the district court, it asserted that Ralph's claim was settled by Robinson v. State, 249 Md. 200, 238 A.2d 875 (1968),

quently, when faced squarely with the contention that the death penalty is unconstitutionally disproportionate to the crime of rape, we noted in Snider v. Peyton, 356 F.2d 626, 627 (4th Cir. 1966):

> "There is extreme variation in the degree of culpability of rapists. If one were sentenced to death upon conviction of rape of an adult under circumstances lacking great aggravation, the Supreme Court might well find it an appropriate case to consider the constitutional questions tendered to us. Even an inferior court such as ours might find the question not foreclosed to it if the actual and potential harm to the victim was relatively slight."

The hypothetical case we envisioned in *Snider* is before us now. Armed with a tire iron, Ralph broke into the victim's home late at night. Threatening her and her young son, who was asleep in another room, with death if she did not submit, he forcibly committed rape and sodomy. The prosecuting witness was neither of tender years nor aged, but she was frail and unquestionably her fear was genuine. The physician who thoroughly examined her shortly after the crime testified that he found "no outward evidence of injury or violence" nor any signs of unusual psychological trauma. Five days later Ralph was arrested in the District of Columbia for other offenses, and during the course of this investigation he confessed to the Maryland crime.

On these facts, it is appropriate to consider the constitutional implications of capital punishment for a rape that has neither taken nor endangered life. Cf. Rudolph v. Alabama, 375 U.S. 889, 84 S.Ct. 155, 11 L.Ed.2d 119 (1963) (Goldberg, J., dissenting from a denial of certiorari). A critic of Mr. Justice Goldberg's dissent correctly noted: "There is a sense in which life is always endangered by sexual attack, just as there is a sense in which it is always endangered by robbery, or by burglary of a dwelling, or by any physical assault." [2] We use the term, however, in another sense—that there are rational gradations of culpability that can be made on the basis of injury to the victim. For example, Nevada distinguishes for purposes of punishment rape which results in substantial bodily harm. Nev.Rev. Stat. § 200.363 (1968).

■■ The State's principal argument —other than lack of precedent favoring Ralph—is that abolition of capital punishment presents a political question which only the legislative branch of the government can resolve. We cannot accept this contention. The fact that a Maryland statute [3] authorizes capital punishment for rape does not conclusively establish the punishment's constitutionality, for the Eighth Amendment is a limitation on both legislative and judi-

---

which rejected a claim that the death penalty for assault with intent to commit rape violated the Eighth Amendment. The Maryland courts have consistently taken the position that punishment is not cruel and unusual if it is within the statutory limits prescribed for the crime and that the trial court alone has the right to determine the penalty within those limits. See, e. g., Jones v. State, 247 Md. 530, 233 A.2d 791 (1967); Reid v. State, 200 Md. 89, 92–93, 88 A.2d 478, 479, cert. denied, 344 U.S. 848, 73 S.Ct. 63, 97 L.Ed. 659 (1952); Merchant v. State, 217 Md. 61, 70, 141 A.2d 487, 492 (1958); Walker v. State, 186 Md. 440, 444–445, 47 A.2d 47 (1946); Dutton v. State, 123 Md. 373, 385, 91 A. 417 (1914). Since proceeding in the state courts would have been ineffective, Ralph

has satisfied the exhaustion requirement of 28 U.S.C. § 2254 (Supp. II, 1966). Evans v. Cunningham, 335 F.2d 491, 493 (4th Cir. 1964).

2. Packer, Making the Punishment Fit the Crime, 77 Harv.L.Rev. 1071, 1077 (1964).

3. Md.Ann.Code art. 27, § 461 (Repl.Vol. 1967) provides:
"Every person convicted of a crime of rape or as being accessory thereto before the fact shall, at the discretion of the court, suffer death, or be sentenced to confinement in the penitentiary for the period of his natural life, or undergo a confinement in the penitentiary for not less than eighteen months nor more than twenty-one years; and penetration shall be evidence of rape, without proof of emission."

cial action.[4] Maryland's legislature enacted penalties for rape that range from eighteen months' imprisonment to death. At issue, therefore, is the constitutionality of the trial court's selection of the death penalty from the alternatives allowed by the statute in a case where the convicted rapist has neither taken nor endangered life.

Admittedly the scope of the Eighth Amendment's prohibition of cruel and unusual punishment is difficult to define.[5] Supreme Court pronouncements on the constitutionality of the death penalty in general are scarce and inconclusive. The Court has never held directly that the death penalty is or is not cruel and unusual punishment. Only in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), did the Court hear argument on that issue, and then it reversed the case on procedural grounds. Cf. Maxwell v. Bishop, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970). By implication the Court has approved the death penalty by stating that shooting and electrocution are not cruel and unusual forms of execution. Wilkerson v. Utah, 99 U.S. 130, 25 L.Ed. 345 (1878); In re Kemmler, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890). Dicta in a few cases suggest that capital punishment is constitutionally permissible. See, e. g., Trop v. Dulles, 356 U.S. 86, 99, 78 S.Ct. 590, 2 L.Ed.2d 630

(1958); State of La. ex rel. Francis v. Resweber, 329 U.S. 459, 463, 67 S.Ct. 374, 91 L.Ed. 422 (1947). Other courts have consistently held capital punishment does not violate the Eighth Amendment. See generally, Goldberg & Dershowitz, Declaring the Death Penalty Unconstitutional, 83 Harv.L.Rev. 1773, 1774 n. 6 and 7 (1970). One state court, however, has held that the death penalty for rape was so excessive under the circumstances that it violated the state's constitutional prohibition against cruel or unusual punishment. Calhoun v. State, 85 Tex.Cr.R. 496, 214 S.W. 335, 338 (1919).

▮▮ The constitutionality of Ralph's punishment cannot rest on the subjective opinions of the judges who imposed the sentence or of the judges who must review the case.[6] On the contrary, his punishment must be tested objectively. Despite the lack of controlling precedent, we believe the Supreme Court has fashioned a workable objective standard for determining whether punishment is cruel and unusual. As early as 1892, Mr. Justice Field suggested that the prohibition of the Eighth Amendment is directed not only against torture or barbarism, "but against all punishments which by their excessive length or severity are greatly disproportioned to the offenses charged."[7] Within twenty years

---

4. Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); United States v. McKinney, 427 F.2d 449, 455 (6th Cir. 1970).

5. U.S.Const. Am. 8 provides:
   "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."
   Both the majority and the dissenting opinions in Weems v. United States, 217 U.S 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), contain historical analyses of the development of the Eighth Amendment and the concept of cruel and unusual punishment. See Note, The Effectiveness of the Eighth Amendment: An Appraisal of Cruel and Unusual Punishment, 36 N.Y.U.L.Rev. 846 (1961).

6. Trop v. Dulles, 356 U.S. 86, 103, 78 S.Ct. 590 (1958); Maxwell v. Bishop, 398 F.2d 138, 153 (8th Cir. 1968), va-

cated and remanded, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970).

7. O'Neil v. Vermont, 144 U.S. 323, 339, 12 S.Ct. 693, 699, 36 L.Ed. 450 (1892) (Field, J., dissenting). O'Neil had been convicted of 307 separate offenses of selling intoxicating liquor. His fines and costs aggregated $6,638.72, and the judgment provided that if this sum were not paid, he should be imprisoned for 54 years and 204 days. Mr. Justice Harlan, who was joined by Mr. Justice Brewer in a separate dissent, also wrote that the punishment was cruel and unusual in view of the character of the offenses. The majority did not dispute the dissenters on this point. They held, instead, that the issue of cruel and unusual punishment presented a state and not a federal question. However, it is now settled that the Eighth Amendment's pro-

the Court adopted Mr. Justice Field's view. In Weems v. United States, 217 U.S. 399, 30 S.Ct. 544 (1910), the Court held a section of the Philippine penal code imposed cruel and unusual punishment, because "it is a precept of justice that punishment for crime should be graduated and proportional to offense." 217 U.S. at 367, 30 S.Ct. at 549. The statute provided that falsification of a public record carried a minimum sentence of twelve years hard labor in ankle chains with subsequent civil disabilities. Not only was the punishment disproportionate relative to Philippine laws, it had no counterpart in any American jurisdiction. This contrast was more than evidence of differing legislative judgment; it condemned the punishment as cruel and unusual. Weighing the punishment by this method, the Court gave full effect to current concepts of proportionality, because the cruel and unusual punishment clause is "progressive" and "is not fastened to the obsolete, but may acquire meaning as public opinion becomes enlightened by a humane justice." 217 U.S. at 378, 30 S.Ct. at 553.[8]

Nearly fifty years after *Weems*, the Court held that denationalization for wartime desertion was cruel and unusual punishment. Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590 (1958). In reaching this decision, the Court reiterated that "the words of the [Eighth] Amendment are not precise, and that their scope is not static." 356 U.S. at 100, 78 S.Ct. at 598. And it added, "The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." 356 U.S. at 101, 78 S.Ct. at 598. The Court noted that precise distinctions between the words "cruel" and "unusual" generally have not been drawn, but it continued, "If the word 'unusual' is to have any meaning apart from the word 'cruel' * * * the meaning should be the ordinary one, signifying something different from that which is generally done." 356 U.S. at 100 n. 32, 78 S.Ct. at 598. Viewing denationalization in this light, the Court observed that only two countries in the world impose this penalty for desertion.

*Trop* also contains the most recent pertinent dictum on the death penalty. There the Court said, 356 U.S. at 99, 78 S.Ct. at 597:

"Whatever the arguments may be against capital punishment, both on moral grounds and in terms of accomplishing the purposes of the punishment—and they are forceful—the death penalty has been employed throughout our history, and, in a day when it is still widely accepted, it cannot be said to violate the constitutional concept of cruelty."

Accepting the *Trop* formulation, however, does not decide the case. Rather it points up the critical issue: Do we still live in a day when the death penalty is widely accepted for rape when the victim's life has not been taken or endangered? Or is capital punishment for this crime so disproportionate that, in fact, it has been widely rejected? In considering these questions, a court must view the Eighth Amendment not merely from the historic perspective of "the mischief that gave it birth," [9] but also from a vantage point that discloses the "evolving standards of decency that mark the progress of a maturing society." [10]

An objective indication of society's "evolving standards of decency" can be

hibition of cruel and unusual punishment is applied to the states by the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

8. Other examples of sentences set aside as disproportionate are United States v. McKinney, 427 F.2d 449, 455 (6th Cir. 1970) ; Dembowski v. State, 240 N.E.2d 815 (Ind.1968) ; Cannon v. Gladden, 203 Or. 629, 281 P.2d 233 (1955) ; State v. Kimbrough, 212 S.C. 348, 46 S.E.2d 273 (1948) ; and Calhoun v. State, 85 Tex. Cr.R. 496, 214 S.W. 335, 338 (1919).

9. Weems v. United States, 217 U.S. 349, 373, 30 S.Ct. 544, 551 (1910).

10. Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 598 (1958).

drawn from the trend of legislative action. As Mr. Justice Stone noted, "The social policy and judgment expressed in legislation * * * would seem to merit that judicial recognition which is freely accorded to the like expression in judicial precedent." [11] The precedent to be gathered from the course of legislation on capital punishment is unmistakable. Generally, laws authorizing capital punishment are justified as efficient, economical means of protecting society by permanently removing a criminal who otherwise might offend again and as deterrents to other persons. Many people also consider death to be just retribution for serious crimes. [12] Therefore, when legislators abolish the death penalty for a certain crime, we may fairly assume that they deem it excessive and that the aims of punishment may be achieved by less severe measures.

The most recent instance of the abolition of capital punishment occurred in July 1970, when, in a bill designed to cope with the rising crime rate in the District of Columbia, Congress eliminated death as a penalty for rape. [13] On the other hand, within the special maritime and territorial jurisdiction of the United States, rape is still punishable by death or imprisonment. [14] Significantly, however, in only one year out of the last forty has the federal government executed anyone for that crime. [15] Moreover, the National Commission on Reform of Federal Criminal Laws has recommended repeal of the death penalty for rape. [16] This, too, is the recommendation of the Model Penal Code. [17]

Congressional action in recently repealing the death penalty for rape in the District of Columbia follows a worldwide trend. Presently the United States is one of only four nations in which rape is punishable by death, [18] and in this country 34 states punish rape only by imprisonment. [19] In none of the 16 remaining

11. Stone, The Common Law in the United States, 50 Harv.L.Rev. 4, 14 (1936). See also Moragne v. United States Marine Lines, 398 U.S. 375, 390, 90 S.Ct. 1772, 26 L.Ed. 339 (1970).

12. On the other hand, the Supreme Court, in Williams v. New York, 337 U.S. 241, 248, 69 S.Ct. 1079, 1084, 93 L.Ed. 1337 (1948), stated:
   "Retribution is no longer the dominant objective of the criminal law. Reformation and rehabilitation of offenders have become important goals of criminal jurisprudence."

13. D.C.Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, § 20, 84 Stat. 473, 600, amending D.C. Code Ann. § 22–2801 (1970). The legislative history indicates that the background for the amendment is United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1969), which held the death penalty provision in the federal kidnapping law was unconstitutional because it tended to coerce a defendant to either plead guilty or be tried without a jury. The District of Columbia death penalty for rape suffered the same defect. Instead of amending the statute to retain the death penalty under proper procedures, Congress abolished it for rape, while retaining it for other crimes. See H.R.Rep.No. 91–907, 91st Cong., 2d Sess. (1970).

14. 18 U.S.C. § 2031 (1964). Rape is also punishable by death under military law, 10 U.S.C. § 920 (1964), but it is not a capital crime under law applicable to Indian country, 18 U.S.C. § 1153 (Supp. V, 1970).

15. United States Dep't of Justice, Bureau of Prisons, National Prisoner Statistics, No. 45, Capital Punishment 1930–1968, at 29 (1969).

16. National Commission on Reform of Federal Criminal Laws, Study Draft of a New Federal Criminal Code, §§ 1641 and 3201 (1970).

17. ALI, Model Penal Code, §§ 213.1 and 6.06 (Proposed Official Draft, 1962).

18. The others are Malawi, China, and the Union of South Africa. United Nations, Dep't of Economic and Social Affairs, Capital Punishment, at 40 (1968).

19. Alaska, Arizona, California, Colorado, Connecticut, Delaware, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, South Dakota, Utah, Vermont, Washington, West Virginia, Wisconsin, and Wyoming.

states is death mandatory, but it is retained as a sentencing alternate.[20] It appears, therefore, that the overwhelming majority of the nations of the world, legislatures of more than two-thirds of the states of the union, and Congress, as evidenced by its amendment of the District of Columbia Code, now consider the death penalty to be an excessive punishment for the crime of rape.

In theory a minority of jurisdictions accept the death penalty for rape because it remains a part of their criminal codes, but the extreme infrequency of execution belies the argument. Maryland executed twenty-four persons for rape between 1930 and 1947, and since 1948 no one has been put to death in Maryland for that crime. The infrequency of execution in Maryland does not differ significantly from the practice in other states that still retain the death penalty. Throughout the United States, 455 persons have been executed for rape since 1930. From an average of twenty a year in the 1940's, executions dropped to ten a year in the 1950's and less than six a year in the early part of the 1960's. No

one has been put to death in the United States for rape since 1964.[21]

Although the legislature has the responsibility of establishing criminal penalties, subject only to constitutional limitations, popular acceptance or rejection of capital punishment is reflected by the incidence of actual executions. When the death penalty for rape is exacted with the infrequency that the statistics disclose, there is little pressure for amendment. Public awareness diminishes as the frequency of imposing the penalty decreases, and legislative action is not likely to be prompted when the consequences befall only a few prisoners. For purposes of ascertaining evolving standards, the retention of the death penalty for rape in the codes of some states is less significant than its steady fall into disuse and the present moratorium on executions.

Infrequent imposition of the death penalty for rape not only indicates that it is excessive, it also suggests that it is meted out arbitrarily. In 1960, the year Ralph committed the offense, 15,560 reports of rape were recorded in the United States.[22] From 1960–1968 there were

20. Nevada authorizes capital punishment for rape where the offense results in substantial bodily harm to the victim. Nev. Rev.Stat. § 200.363 (1968). See also § 200.400 (aggravated assault with intent to commit rape). Other states' statutes authorizing the death penalty for rape are: Ala.Code, tit. 14 § 395 (Recomp. Vol. 1958); Ark.Stat.Ann. § 41–3403 (Supp.1969); Fla.Stat.Ann. § 794.01 (1965); Ga.Code Ann. § 26–2001 (1969); Ky.Rev.Stat.Ann. § 435.090 (1969); La. Rev.Stat.Ann. § 14:42 (1950) (statute provides for death sentence only, but it has been construed by the Attorney General to permit a jury to return a verdict of "guilty without capital punishment"); Md.Code Ann., art. 27, § 461 (Repl.Vol. 1967); Miss.Code Ann. § 2358 (Recomp. Vol. 1956); Vernon's Ann.Mo.Stat. § 559.260 (1953); N.C.Gen.Stat. § 14–21 (Repl.Vol. 1969); Okla.Stat.Ann., tit. 21, § 1115 (Supp.1970); S.C.Code Ann. § 16–72 (1962); Tenn.Code Ann. § 39–3702 (1955); Vernon's Tex.Pen.Code Ann., art. 1189 (1961); Va.Code Ann. § 18.1–44 (Repl.Vol. 1960).

21. No one has been executed in this country for any crime since 1967. At the end of 1968, 479 prisoners remained under sentence of death. United States Dep't of Justice, Bureau of Prisons, *National Prisoner Statistics No. 45, Capital Punishment 1930–1968*, at 7, 26 (1969). Stays have been granted for many reasons, both procedural and substantive, and they, of course, do not conclusively establish that society repudiates capital punishment for all crimes. The reluctance to carry out death sentences, however, is symptomatic of a national and worldwide trend away from capital punishment. See Witherspoon v. Illinois, 391 U.S. 510, 520, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1967); Capital Punishment (Sellin ed. 1967); United Nations, Dep't of Economic and Social Affairs, *Capital Punishment* (1968). More fundamentally, though, the doubts about capital punishment demonstrate concern over the effectiveness of our entire penal system.

22. Statistics on reported offenses are derived from FBI, Uniform Crime Reports, *Crime in the United States*, 1960 through

190,790 rapes reported. In contrast to the frequency of the commission of rape, the imposition of the death penalty is extremely rare. In 1961, the year in which Ralph was convicted, 21 persons were sentenced to death for rape, and in the period 1960–1968, 101 convicted rapists received death sentences. During the same period of time 28 prisoners were actually executed for the crime. The high incidence of the crime compared with the low incidence of the death penalty suggests the lack of a rational ground for selecting the prisoners on whom the death penalty is inflicted.[23] This is particularly true when, as here, the harshest penalty is imposed on a rapist whose act is not marked with the great aggravation that often accompanies this crime.[24]

We conclude, therefore, that two factors coalesce to establish that the death sentence is so disproportionate to the crime of rape when the victim's life is neither taken nor endangered that it violates the Eighth Amendment. First, in most jurisdictions death is now considered an excessive penalty for rape. This has been demonstrated by the legislative trend to abolish capital punishment for this crime and by the infrequency of its infliction in jurisdictions that still authorize it. Second, when a rapist does not take or endanger the life of his victim, the selection of the death penalty from the range of punishment authorized by statute is anomalous when compared to the large number of rapists who are sentenced to prison. Lest our opinion be given a breadth greater than is necessary for the decision of this case, we do not hold, despite the argument of the amicus curiae, that death is an unconstitutional punishment for all rapes.

## II.

Before admitting evidence of Ralph's confession, the trial court heard extensive testimony on the issue of voluntariness, including testimony by the defendant. The court resolved the conflicting evidence and, on the mixed question of law and fact, found the confession to have been freely and voluntarily given. The ruling has been upheld on direct appeal and in collateral proceedings.[25]

Ralph now argues that admission of his confession violated the Fifth and Fourteenth Amendments because the court did not find it voluntary beyond a reasonable doubt. This standard, he claims, is required by United States v. Inman, 352 F.2d 954 (4th Cir. 1965), and Mullins v. United States, 382 F.2d 258 (4th Cir. 1967), which hold that federal courts in this circuit must find a confession voluntary beyond a reasonable doubt before allowing its presentation to the jury. By their own terms these cases are distinguishable. As we reiterated in Morris v. Boles, 386 F.2d 395, 402 (4th Cir. 1967), these cases do not "prescribe a rule of constitutional application to prosecutions in state courts within this Circuit." Instead, they rest on our supervisory power over district courts. Accord, Pea v. United States, 130 U.S.App.D.C. 66, 397 F.2d 627, 637 (1967).

1968. Figures on death sentences and executions are from the United States Dep't of Justice, *National Prisoner Statistics.*

23. See Goldberg & Dershowitz, Declaring the Death Penalty Unconstitutional, 83 Harv.L.Rev. 1773, 1790 (1970).

24. Ralph contends that he arbitrarily received the death penalty because he is black and his victim was white. In support, he calls attention to statistics that illustrate a high correlation of race to death sentences in rape cases. See United States Dep't of Justice, Bureau of Prisons, *National Prisoner Statistics No.*

45, *Capital Punishment 1930–1968,* at 10 (1969) ; Howard, *Administration of Rape Cases in the City of Baltimore and the State of Maryland* (1967). But there remain too many variables for us to conclude that the statistics prove that Ralph received the death penalty because he is black. Cf. Maxwell v. Bishop, 398 F.2d 138 (8th Cir. 1968), vacated and remanded on other grounds, 398 U.S. 262, 90 S.Ct. 1578 (1970).

25. Ralph v. State, 226 Md. 480, 174 A.2d 163, 167 (1961) ; Ralph v. Pepersack, 218 F.Supp. 932 (D.Md.1963), aff'd, 335 F.2d 128 (4th Cir. 1964).

There is no constitutional invalidity in the procedures that led to the finding of Ralph's guilt. His sentence alone violates the Eighth and the Fourteenth Amendments. Therefore, the case is remanded to the district court with directions to withhold the writ for a reasonable time to permit the state to impose a sentence other than death.

## ORDER

Upon consideration of the petition for a rehearing en banc, with the concurrence of a majority of the court,

It is adjudged and ordered that the petition for rehearing en banc is denied.

BOREMAN and ALBERT V. BRYAN, Circuit Judges, dissent from the denial of the petition for rehearing en banc.

HAYNSWORTH, Chief Judge.

## PETITION FOR REHEARING

I joined in the panel decision and in the vote denying a rehearing only because of the explicit testimony of the victim's physician that she suffered no lasting physical or psychological harm. This fact seems to me of crucial significance in separating this case from those other rape cases in which the death penalty may be justified under the Eighth Amendment.

The harm done the victim may or may not bear upon the moral guilt of her attacker. If there is lasting physical injury, it probably will, but it well may not if the lasting harm is psychological. But the nature, degree and duration of the harm have long been recognized as important criteria in determining the appropriateness of punishment. The difference between murder and attempted murder is a fortuitous accident without relevance to the assailant's moral culpability, but in every jurisdiction which retains capital punishment for murder, the survival of the victim avoids all possibility of imposition of the death penalty.

The victim of any rape, of course, suffers harm and great indignity, but if the harm is not lasting, either physically or psychologically, as her physician testified without contradiction, one of the most important criteria which may be thought to justify the death penalty in other rape cases is simply absent.

There is nothing in the court's opinion suggestive of mitigation of the rapist's conduct or suggesting that he be released from imprisonment. The state can confine him as long as he lives. There is, however, a qualitative difference between life and death which cannot be so readily disregarded as even vast differences between terms of years. For myself, therefore, I will find myself entirely free in another case to find no bar in the Eighth Amendment against the imposition of the death penalty for rape if the victim suffered grievous physical or psychological harm whether or not it clearly appeared that her life had been endangered.

BOREMAN, Circuit Judge, with whom BRYAN, Circuit Judge, joins, dissenting from the majority's refusal to grant rehearing en banc:

A three-judge panel of this court has held that the imposition of the death penalty upon William Ralph for rape violates the Eighth and Fourteenth Amendments and has remanded the case to the district court with directions to withhold the writ of habeas corpus for a reasonable time to permit the State of Maryland to impose a sentence other than death. The panel has determined that the Eighth Amendment's prohibition against cruel and unusual punishment forbids Ralph's execution for rape since his victim's life was neither taken nor endangered. The decision does not hold that the Maryland statute authorizing the death penalty for the crime of rape is unconstitutional per se, but determines that the punishment imposed in this case was so disproportionate to the crime of rape committed upon the victim that it violates the Eighth Amendment. Indeed, the panel decision states

"At issue, therefore, is the constitutionality of the trial court's selection of the death penalty from the alternatives allowed by the statute * * *."

A majority of this court has ordered that Maryland's petition for rehearing en banc be denied.

In 1964 this court considered and disposed of several questions then presented on appeal from a denial of habeas corpus relief by the United States District Court for the District of Maryland. Ralph v. Pepersack, 335 F.2d 128. At page 141 we noted Ralph's contention that the imposition of the death penalty on a convicted rapist is "uncivilized conduct" and constitutes cruel and inhuman punishment where he has neither taken nor endangered the life of his victim and pointed to Rudolph v. Alabama, 375 U.S. 889, 84 S.Ct. 155, 11 L.Ed.2d 119 (1963), in which the Court denied certiorari. Ordinarily, the mere denial of certiorari is not to be considered as decisive of questions raised by the application but in *Rudolph* a majority of the Court clearly refused to consider the question here presented. Such refusal was reflected in Justice Goldberg's dissent (in which he was joined by Justices Douglas and Brennan), the dissenters arguing that the Court should grant certiorari for the express purpose of considering this Eighth Amendment question. Justice Goldberg called attention to the trend away from capital punishment, just as does the opinion in the instant case, and referred to statistics then available in 1963. Thus, in *Rudolph* it clearly appeared that the Supreme Court had the opportunity to consider the very question here presented but declined to do so and we, therefore, stated that we had found no Supreme Court decision to support Ralph's Eighth Amendment contention and that we were not disposed to act favorably upon it.[1]

The panel decision in the instant case is premised upon two principal factors: First, what is couched in terms as a trend demonstrated by legislatures to abolish capital punishment for the crime of rape, coupled with the infrequency of the ex-action of the supreme penalty in jurisdictions that still authorize it; and, secondly, that the selection of the death penalty from the range of punishments authorized by the statute is anomalous when considering the large numbers of rapists who are sentenced to prison in cases where the life of the victim has not been taken or endangered.

It is well settled that the imposition of a sentence in a criminal case is ordinarily a matter peculiarly within the province of the trial judge and that a sentence within limits prescribed by law will be reviewed on appeal only where it is so grossly and inordinately disproportionate to the offense that the sentence obviously was dictated not by a sense of public duty, but by passion, prejudice, ill will, vidictiveness or other unworthy motive.[2]

The conclusion of the panel that the two factors above mentioned coalesce to establish that the death sentence is so disproportionate to the crime of rape when the victim's life is neither taken nor endangered that it violates the Eighth Amendment runs contra to these principles.

In the first place, this court now seeks to modify a sentence meted out under a statute constitutionally valid in 1961 because trends in other jurisdictions indicate that, in 1970, death is considered an excessive penalty for rape. Punishment is inflicted according to the law at the time of the judgment; and if standards of today dictate a mitigation of the penalty for a 1961 crime, executive clemency or legislative action specifically providing that new laws shall apply to punishment under the old are the appropriate modes and methods for applying today's standards. These functions should not be usurped by the courts. This is not to say that the Eighth Amendment is not a limitation on both legislative and judicial action but this court should not excuse its interference in these functions by saying at issue is the constitutionality

1. Ralph v. Pepersack, 335 F.2d 128, at 141.

2. Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910); 21 Am.Jur.2d Criminal Law §§ 614, 564.

of the trial court's selection of the death penalty when, in 1961, in selecting the death penalty the court obviously could not anticipate the trends in 1970. The decision in this case actually legislates, limiting the Maryland penalties for rape and the imposition of the death sentence thereunder to precise circumstances where the victim's life was either taken or endangered.[3] But the term "endangered" in itself is extremely imprecise; what circumstances may be encompassed by the term are very broad and, indeed, the term "endangered" may well have encompassed the circumstances in the instant case. The Maryland statute is broad in its scope and provides great latitude to the sentencing court in fixing the penalty for rape, as minimal as eighteen months and as severe as death. *See* Ann.Code of Md. (Repl.Vol. 1967), Art. 27, § 461. Is this Maryland statute unconstitutional in its present form or is it constitutional on its face but unconstitutionally applied if the death penalty is imposed in cases other than those in which a victim's life is taken or endangered?

Second, and foremost, the very facts recited in rather abbreviated form in the court's opinion are contrary to the decision as rendered:

> "Armed with a tire iron, Ralph broke into the victim's home late at night. Threatening her and her young son, who was asleep in another room, with death if she did not submit, he forcibly committed rape and sodomy."

But there are other facts and circumstances which properly may be taken into consideration. Ralph entered the victim's home in the dead of night and as he entered through the garage and basement he pulled out the fuse box to make certain that he would be operating in the dark and thus make identification more difficult. He picked up a metal tire tool which he carried with him to the victim's bedroom and which was later found there. It was apparent that he had had the victim's home under surveillance before breaking in at 2 o'clock in the morning and his visit appears to have been carefully planned and premeditated. It was obvious that he was bent on rape and was prepared to resort to such violence as might be necessary. The victim was not selected at random. She was a small, frail woman and Ralph threatened that if she made an outcry he would kill her and her young son asleep in the next room. To me, this is an aggravated case, not only because of the threats of death to the victim and her son which put her in mortal fear but also for the reason that before the crime of rape was perpetrated the defendant performed perverted and degrading acts upon the person of the victim and then subjected her to further degradations and perversions. Many a victim under such circumstances might well prefer death.

The offense here was committed on March 21, 1960, in Maryland's Montgomery County near the District of Columbia line. Two or three nights later a black male answering to Ralph's description entered another home not far distant from the scene of this crime where he attempted to commit rape but was beaten off by the woman's daughter and he made good his escape. It was only two or three nights after that when Ralph was arrested on a street near a wooded area to which the police had been dispatched after reports of a woman's screams. This woman, Mrs. Robinson, also described her attacker as a black male, the description fitting this prisoner, but when she was called to the police station in Washington and saw Ralph she was not able to positively identify him since she had been attacked in the dark. She had been grabbed while walking along the street and was forced by her attacker into the woods and there, before being raped, she was forced to submit to acts of perversion. Despite the failure

---

3. It seems rather senseless to include a situation where the victim's life was taken, for by that very act the crime of murder evolves and thus another question is presented as to whether the death penalty is appropriate.

of the victim to identify him, Ralph confessed that he was Mrs. Robinson's attacker.

In the instant case, the victim reacted to the threats upon her life and the life of her young child and submitted to rape and sodomy. If the victim's life was not endangered what do these circumstances constitute? If a majority of this court is determined to strike down the death penalty for rape in accordance with the "trend" and intends to limit the circumstances under which the death sentence may be imposed, it should more clearly define "endangered." Surely the court is not seeking to impose a "harm-to-victim" situation similar to that under various kidnaping statutes, such as under Title 18 U.S.C. § 1201. Is the court's decision to be construed as saying that the victim in the instant case had to be hit over the head with the tire iron for her life to be endangered? The crime of rape is a crime of force against the consent of the victim and while force is an element of the crime there is the clear alternative, intimidation, which may be by threats of immediate great bodily harm accompanied by the apparent power of execution. To be bashed with a tire iron certainly constitutes great bodily harm and intimidation is the inescapable result when, in the face of a threat of death, a man armed with a tire iron has the immediate and apparent power of executing the threat. Furthermore, there are other dangers to the life and health of the victim inherent in Ralph's attack which should not be lightly disregarded. What about the possibility of pregnancy and of infecting the victim with a loathsome disease? Is it only when the attack does not produce the possible dire results that the death penalty becomes cruel, inhuman and unusual punishment?

Ralph's case was tried in Maryland before a Bench of three judges without a jury and the death penalty was chosen from the statutory alternatives as the appropriate punishment, justifiable under the circumstances. In its opinion the panel here admonishes that the con-

stitutionality of Ralph's punishment cannot rest on the subjective opinions of the judges who imposed the sentence or of the judges who must review the case; that, on the contrary, his punishment must be tested objectively. If the objective test to be applied in the instant case is to turn upon whether the victim's life was "endangered," the death penalty for rape may never be objectively imposed absent further explication and elucidation as to what constitutes danger to life. It is my impression that the judges of the panel in the instant case have imposed their own subjective opinion upon the facts of the instant case and have decided to weigh the trauma, harm and danger to the victim upon the cold record. The panel concludes that

"The prosecuting witness was neither of tender years nor aged, but she was frail and unquestionably her fear was genuine. The physician who thoroughly examined her shortly after the crime testified that he found 'no outward evidence of injury or violence' nor any signs of unusual psychological trauma."

From this, the panel apparently concludes that the victim's life was not endangered. There may have been no visible evidence of physical injury since the victim admittedly offered no resistance because of the intimidation and the threat of death. Does the fact that the victim was not brutally beaten and there was no evidence of physical violence on the part of the attacker save Ralph from the death penalty? If so, then the permissible punishment in a rape case may depend entirely upon whether the victim submitted or resisted. In my opinion it was for the trial judges who were there to observe and view the witnesses at the trial to make this necessary subjective finding. It was appropriate for them to conclude that the victim's life was endangered and that she, having been forcibly raped without consent, was, indeed, seriously harmed.

The question of the appropriateness of a particular penalty for a particular crime may be entirely proper, that is, is

the penalty disproportionate to the actual circumstances of the crime involved? If the decision here is to be limited to the case of William Ralph, in that his sentence was disproportionate to the crime he committed, then it appears that the question is one as to the subjective judgment of the appellate court versus the subjective judgment of the trial court. I can find no justification here for this court's substitution of its judgment for that of the trial judges.

The panel's decision is silent on the meaning of the term "endangered" and I am disappointed that the invitation to render a more definitive decision as to when and under what circumstances a life is endangered has been declined by a majority of the members of this court.