**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Philip William McKINNEY, Defendant-Appellant.**

**No. 19649.**

United States Court of Appeals, Sixth Circuit.

June 15, 1970.

Bertrand B. Pogrebin, Mineola, N. Y., Kimble, Schapiro, Stevens, Harcha & Young, Portsmouth, Ohio, on the brief; Jack D. Young, Portsmouth, Ohio, Rains, Pogrebin & Scher, Mineola, N. Y., of counsel, for appellant.

James F. Cook, Asst. U. S. Atty., Lexington, Ky., Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., on the brief, for appellee.

Before PHILLIPS, Chief Judge, and WEICK and EDWARDS, Circuit Judges.

WEICK, Circuit Judge.

Appellant, Philip William McKinney, was convicted by the District Judge, sitting without a jury, for knowingly refusing to submit to induction into the Armed Forces, and was sentenced to five years' imprisonment. 50 U.S.C. App. § 462(a). He appeals from the judgment of conviction. We affirm.

McKinney became 18 years of age on October 19, 1965, at which time he registered for the draft. He was then a first-year student at Ohio Wesleyan University in Delaware, Ohio. His Local Board, No. 106, in Portsmouth, Ohio, classified him 2–S (student deferment).

McKinney completed and returned to the Local Board on October 4, 1966 a current information questionnaire which had been sent to him so the Board could determine whether he was properly classified. In the questionnaire he indicated that he was no longer a student. As a result of this information, his Local Board reclassified him 1–A (available for induction). He did not appeal from this classification.

On October 25, 1966, McKinney was ordered to report for a physical examination on November 29; he complied with this order. In December, 1966, his Local

Board received a Certificate of Acceptability (Form DD62), indicating that from a physical standpoint McKinney was acceptable for military service, and the Local Board forwarded a copy of the certificate to him.

On May 11, 1967, McKinney was sent another current information questionnaire. On the face of the questionnaire there was stated: "The law requires you to fill out and return this questionnaire on or before the date shown to the right above [May 21, 1967] in order that your local board will have current information to enable it to classify you." He never returned the questionnaire to the Board.[1] On May 15 he received a notice to report for induction at the Induction Center in Ashland, Kentucky, on June 7.

McKinney testified that he was pretty much resigned to serving in the Army, and he reported for induction as ordered. At the Induction Center he surrendered his Selective Service Registration Card and his Notice of Classification Card. He underwent a pre-induction physical examination at that time, and was found physically acceptable for military service. He was also given an Armed Forces Security questionnaire to complete (form DD98), and was then directed to remain over night at the Induction Center.

McKinney testified that during his stay at the Induction Center, his feelings of conscientious objection crystallized. On the second day of his stay at the Center, McKinney was interviewed for security clearance by an Army Intelligence Officer, and was questioned concerning some answers given the previous day in the Armed Forces Security questionnaire. The interview was conducted under oath and was reduced to writing. McKinney was questioned concerning his membership, affiliation and activities with organizations and groups on the

Attorney General's list. At the close of the interview the following questions were asked and answers given:

"Q. Are you willing to serve in the Armed Forces of the United States?

A. At the present time I would not be adverse to serving in a non-combat position in the military.

Q. Do you consider yourself a conscientious objector?

A. At the present time, yes."

It will be noted that McKinney did not volunteer the information to the Security Officer concerning his beliefs or conscientious objection; his response was only to a question put to him by the officer. As a result of this security interview, McKinney was told that an investigation would be conducted and that he would be informed of the results[2]. McKinney was then sent home without his draft card, which was retained at the Induction Center.

On June 15, the Induction Center sent a certification of acceptability (Form DD62) to McKinney's Local Board, which form in relevant parts recited:

"THE QUALIFICATIONS OF THE ABOVE-NAMED REGISTRANT HAVE BEEN CONSIDERED IN ACCORDANCE WITH THE CURRENT REGULATIONS GOVERNING ACCEPTANCE OF SELECTIVE SERVICE REGISTRANTS AND HE WAS THIS DATE:

☐ 1. Found fully acceptable for induction into the Armed Forces.

☐ 2. Found not acceptable for induction under current standards.

REMARKS (These to be directed to Local Board only)

---

[1] McKinney testified that he completed the current information questionnaire and took it with him to the Induction Center, but that no one there asked for it. Since his instructions were to return the completed questionnaire to his Local Board as he had done with a prior questionnaire, he would not have good reeason to

expect that any one at the Induction Center might ask him for it.

[2] The investigation was for security purposes and had nothing to do with respect to his alleged conscientious objection beliefs.

Acceptability for induction held in abeyance, not presently acceptable for induction."

■ Form DD62, sent to the Local Board, was the correct method to be used to notify it that the registrant had given information requiring further investigation, and that a final determination of his acceptability at the Induction Center could not be made until after completion of the investigation. His acceptability was held in abeyance. Army Regulations in effect at the time provide:

"DD Form 62 prepared for registrants referred to in (2) above will contain in remarks section the notation 'Acceptability for induction held in abeyance, not presently acceptable for induction.' No other notations will be made on the DD Form 62 and no other information or papers will be released to Selective Service local boards. Entries in regard to acceptability for induction will not be made." Army Regulation 601–270 § 80(b) (5) (Aug. 1965).

Thus, correct procedures were followed in all respects in this case. A copy of DD Form 62 was forwarded to McKinney by the Local Board. His records were not returned to the Local Board, nor was the Board informed of McKinney's answer to the question put to him by the Army Intelligence Officer at the Induction Center to the effect that he considered himself at that time a conscientious objector. Nor did McKinney have any further contact with his Local Board.

After six months, on January 2, 1968, the Executive Secretary of the Local Board wrote to the Induction Center inquiring about the status of McKinney's case. The Induction Center responded:

"Subject registrant's acceptability is still being held in obeyance [sic] due to a qualified 98. Follow up action

will be taken so that a final determination can be made."

On March 15, 1968, the Induction Center sent another form DD62 to the Local Board. This time the space had been checked which provided:

"1. Found fully acceptable for induction into the Armed Forces."

McKinney's records were returned to the Local Board on the same date. McKinney received a copy of form DD62 from the Local Board.

On April 10, the Local Board sent to McKinney another current information questionnaire with instructions to complete and return it to the Board within ten days. McKinney never returned the questionnaire to the Board [3].

On April 12, McKinney was sent an order to report for induction on May 15, and he reported to the Induction Center as ordered. He was given another physical examination and was held over until May 17 while results of the examination were checked. He was not asked to complete another Armed Forces Security questionnaire. On May 17 the induction ceremony was held, and McKinney refused to take the ceremonial step forward. He was advised of the consequences of his refusal, but he persisted. He indicated that his refusal was based on his conscientious objection.

Several questions are raised by McKinney in his appeal. He contends: First, that he "was denied due process in that the Local Board never considered his claim of conscientious objection"; Second, that he was denied due process of law because the Local Board did not reclassify him after receipt of the certificate of acceptability from the Induction Center, reciting that he was "not presently acceptable for induction"; and Third, that he was denied due process of law by reason of the failure to provide him with a second DD98 security

---

3. McKinney did not take this questionnaire to the Induction Center, according to his testimony, because no one had asked for it the first time he was at the Induction Center. Instructions on the questionnaire are clear that it was to be returned to the Local Board. He should have known where to return Local Board questionnaires because of his previous experience with them.

form at the Induction Center in May, 1968.

■ Relative to McKinney's due process argument that the Board did not consider his conscientious objector claim, it is significant that he never made any such claim to the Board. It had no knowledge of such a claim and was never afforded an opportunity to consider it. He never asked the Board for SSS Form 150, which is the special form for that purpose required by the regulations to be filled out and submitted to the Board for its consideration. The form is specified in Series VIII on page 4 of his Classification Questionnaire.

McKinney relies solely on his answer to the question put to him by the Security Officer at the Induction Center to support his contention that he made a claim for deferment as a conscientious objector. The Board was never informed of this conversation at the Induction Center.

The District Judge was of the view that this colloquy did not constitute a claim for deferment on the basis of conscientious objection, and that if it did, such claim was not made to the proper authority.

The District Judge, in his opinion, stated:

"It appears to the Court that an effort is made here to commingle this inquiry as to the defendant's alleged subversive activities with a claim made at that time he asserted he was a conscientious objector.

" * * * And in the opinion of the Court this is the result of his hindsight. In examining all of these records they find in this one statement made to this Intelligence Officer for the first time that he considered himself a conscientious objector. He did not make the statement. The officer asked him and in response to the inquiry he made that statement * * * He never presented this claim to the draft board. The draft board had no way of knowing about it, if it was a claim. And he didn't assert a claim;

he answered that question 'At the present time, yes.' "

McKinney had full opportunity to inform his Board of his conscientious objection beliefs if he had them and desired to make such a claim. On April 10, 1968, Current Information Questionnaire Form SSS127 was mailed by the Board to McKinney. He claims that he filled out the form but never returned it to the Local Board. In this form McKinney could have advised the Board of his claim of conscientious objection, if he desired to assert it, but he kept the form in his possession and never returned it to the Board in compliance with the instructions on the form. On the questionnaire it was stated: "You may attach any additional information you believe should be brought to the attention of the local board." If McKinney desired to inform the only proper authority, namely, the Local Board, of his claim to conscientious objection, he could have done so by statement attached to this questionnaire.

In the nine months' period between the first and second orders to report for induction, McKinney had ample time to make a claim to his Local Board for deferment on the basis of conscientious objection.

Regulation 1625.1(b) requires a registrant to report to the Board within ten days after it occurs, any fact which might result in his being placed in a different classification. If, as he claims, McKinney's beliefs on conscientious objection "crystallized" on June 8, 1967, when he reported for induction the first time, he did nothing to notify his Board thereof during the nine months' period which elapsed before he received his second order to report for induction.

We are not here dealing with an uneducated illiterate. McKinney was a high school graduate with one year of college. If he had any question about his rights, obligations or duties, he had ample opportunity to consult with his Local Board or with others, for advice.

We think there was substantial evidence to support the finding of the Dis-

trict Judge that McKinney never at any time asserted a claim for deferment on the basis of conscientious objection.

The Government contends that a conscientious objector claim, made for the first time after receipt of an order to report for induction, is too late. We find it unnecessary to determine this question because of our affirmance of the conviction on other grounds. The question of timeliness of the claim, however, is now before the Supreme Court for decision in Ehlert v. United States, cert. granted, 397 U.S. 1074, 90 S.Ct. 1525, 25 L.Ed.2d 808.

■ McKinney contends that he was denied due process of law because the Local Board did not reclassify him after receipt from the Induction Center of the DD62 certificate of acceptability reciting that he was "not presently acceptable for induction."

McKinney urges that the Local Board should have reclassified him I–Y when it received form DD62 on June 15, and that its failure to do so was a procedural error which substantially prejudiced him. As previously shown, form DD62 certificate of acceptability is used by the Army to notify a Local Board whether a registrant has been found acceptable for induction into the Armed Forces.

McKinney argues that when a Local Board receives a form DD62 reciting that the registrant is "not presently acceptable for induction," it is required by 32 C.F.R. § 1632.30 to reopen his classification and reclassify him. In our view, no such procedure is required. Under 32 C.F.R. §§ 1625.11–.13, a reopening requires that the registrant be notified of the reclassification (even if his classification is not changed), and that he be given opportunity to appeal.

McKinney contends that had this procedure been followed in the present case, his classification would have been re-

opened when the Local Board received the DD62, and that he should have been reclassified I–Y [4]. After his reclassification he would have been entitled to notice and an appeal. Similarly, he contends that when the Local Board received the second DD62 on March 15, 1968, indicating that he was fully acceptable, the Board again was required to reclassify him, with the consequent right to notice and appeal. He contends that failure of the Local Board to reclassify him, therefore, denied him two appeals, and caused substantial prejudice.

McKinney's argument is premised on a misunderstanding of the applicable regulations.

32 C.F.R. § 1632.30 provides:

"Upon receiving *notice* from the induction station that a selected man who has been forwarded for induction *has been inducted* or *finally found not qualified* for service in the Armed Forces, it shall reopen his classification and classify him anew." (Emphasis added.)

At the outset, the operation of the regulation is dependent upon receipt of "notice," not on receipt of a DD62 certificate of acceptability. The Army has chosen for its own convenience to send the DD62 as "notice".

Under the regulation the Local Board was required to reopen the classification in only two situations: (1) when the Local Board has been notified that registrant has been actually inducted; or (2) when the Local Board has been notified that registrant has been finally found not qualified. Neither of these two situations existed. The DD62 form sent to the Local Board did not state that McKinney was finally found unacceptable. If the Induction Center had desired to indicate that he was finally found unacceptable, it would have checked off box "2: Found not acceptable for induction

---

4. 32 C.F.R. § 1622.17 provides for a I–Y classification for those found "not currently qualified for service. * * *" It is irrelevant what classification McKinney would have been entitled to, since he

would have been entitled to notice and appeal after reopening, even if his classification had not been changed. 32 C.F.R. §§ 1632.30 and 1625.11–.13.

under current standards." What the Induction Center actually did was to leave both boxes blank, and to insert the remark: "Acceptability for induction held in abeyance, not presently acceptable for induction." As we have previously shown, this complied with the applicable regulation.

 Finally, McKinney contends that he was denied due process of law because he was not provided with a new DD98 security questionnaire to complete at the Induction Center in May, 1968.

Even if it were assumed that the Induction Center was under an obligation to provide to McKinney a second DD98 security questionnaire, we can find no prejudice in its failure to do so. The purpose of the DD98 form is to protect the Armed Forces from persons who, by reason of their affiliations, are not acceptable for service in the Armed Forces. Its purpose is not to protect the registrant. See Welsh v. United States, 404 F.2d 1078, 1085 (9th Cir. 1968), cert. granted, 396 U.S. 816, 90 S.Ct. 53, 24 L.Ed.2d 67 (1969); but see Oshatz v. United States, 404 F.2d 9, 12 (9th Cir. 1968).

An additional reason for finding no denial of due process is the fact that McKinney did not allege any facts which were not included on the original DD98 form and which would have brought about a second security investigation. There was, therefore, no prejudice in the failure to furnish to him a second DD98 form.

 We are concerned with the propriety of imposition of the five years' prison sentence in this case. There was sufficient evidence in this case from which the trier of fact could find that McKinney knowingly refused to submit to induction; however, the record shows that McKinney at all time was willing to serve his country in a noncombatant capacity. The record discloses no prior criminal record. Under these circumstances, we are of the opinion that the maximum sentence was excessive and out of proportion to the offense. Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910); cf. United States v. United Mine Workers, 330 U.S. 258, 304–307 (1947); Smith v. United States, 273 F.2d 462, 468 (10th Cir. 1959) (dissenting opinion by Murrah, Chief Judge), cert. denied, 363 U.S. 846, 80 S.Ct. 1619, 4 L.Ed.2d 1729 (1960); State of Ohio v. Hashmall, 160 Ohio St. 565, 117 N.E.2d 606, cert. denied, 348 U.S. 842, 75 S.Ct. 62, 99 L.Ed. 664 (1954).

The District Judge will have opportunity to reconsider the sentence upon the remand for that purpose.

We affirm the conviction. We remand for reconsideration of the sentence, but we retain jurisdiction to consider the sentence finally imposed.