Anthony **HERMAN**, Appellant,

v.

**UNIVERSITY OF SOUTH CAROLINA**
et al., Appellees.

No. 71-1893.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 10, 1972.

Decided March 27, 1972.

———————

Laughlin McDonald, Columbia, S. C., for appellant.

Alexander S. Macaulay, Asst. Atty. Gen. of South Carolina (Daniel R. McLeod, Atty. Gen. and Phillip M. Grier, Staff Counsel, University of South Carolina, on brief), for appellees.

Before WINTER, CRAVEN and BUTZNER, Circuit Judges.

PER CURIAM:

The district court denied plaintiff, formerly a student at the University of South Carolina, damages and reinstatement in redress of his expulsion as a student for having taken part in a "sit-in" at the student union in protest of the national war policy in the far east. For the reasons sufficiently stated by the district judge, we agree with his conclusions and, hence, we affirm.

At the same time, we were told in argument that after instituting suit plaintiff sought reinstatement and was denied it. No formal reasons for the denial were expressed, but one member of the committee considering the application stated that plaintiff could not obtain favorable consideration while this suit was pending. We were also told that most of the students permanently expelled as a result of the incident have since been reinstated, including the plaintiff in Bistrick v. University of South Carolina, 324 F.Supp. 942 (D.S. C.1971), whose participation in the incident was found by the district court to be "practically identical" to that of the plaintiff in this case, but who did not appeal from the denial of relief to him. We note also that as stated in the opinion of the district court there was "no contention that the plaintiff was personally involved in removing the custodians and employees from the building or attempting to fasten the doors." None is made to us. Rather, the sole case against plaintiff was that "he was seated on the floor in the lobby of the building . . . . Upon being ordered to leave the building by the Assistant Dean of Men . . . plaintiff declined to do so [even upon threat of suspension]."

Although the representations of events occurring subsequent to the institution of suit were uncontroverted in the argument before us, we do not feel at liberty to dispose of the case on the basis of them. It suffices to say that if others, whose participation in the events leading to disciplinary action was not less culpable than that of plaintiff, were forgiven and reinstated, we would see a substantial denial of equal protection of the laws if plaintiff were not afforded similar treatment. If the facts are as represented, we express the hope that

there will be no need for further judicial proceedings.

Affirmed.

CRAVEN, Circuit Judge (dissenting):

Expulsion is the "capital punishment" of university discipline. I find it incredible that the University would expel a student doing satisfactory or superior[1] work in each of his courses for peaceful[2] conduct in protest of national policy. I hold no brief for students or others who resort to violence to express a viewpoint. Persons who resort to violence in disregard of the rights of others may be, in my opinion, properly expelled from a university and also properly subjected to the sanctions of criminal law. But at some point punishment can become so wholly disproportionate to conduct that it either lacks a rational relationship or indicates a motive for the imposition of the sanction other than concern for the orderly process of education.

In the criminal law it has long been recognized that "it is a precept of justice that punishment for crime should be graduated and proportioned to offense." Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910) (12 years hard labor in ankle chains for falsification of public records held to be cruel and unusual punishment). See also Ralph v. Warden, Maryland Penitentiary, 438 F.2d 786 (4th Cir. 1970) (death penalty for rape when victim's life not taken or endangered held to constitute cruel and unusual punishment), United States v. McKinney, 427 F.2d 449 (6th Cir. 1970) (five years for refusing to submit to induction when defendant willing to serve in non-combat capacity was excessive (alternate holding)). This concept of proportionality of punishment to offense is not relegated solely to the criminal law, although the Eighth Amendment gives to courts more specific direction when it is criminal sanctions that are excessive. This concept rests upon an accepted notion of fundamental fairness: an expectation that government will be fair to people—whether in the context of enforcement of the criminal law or the operation of a university.

University administrators need and lawfully have wide discretion in disciplining students whose age, background, and degree of emotional maturity vary widely, and courts should be loath to interfere in the normal disciplinary process of the university. However, when a student is disciplined for conduct which can be recognized as symbolic speech, a great disparity between the severity of the punishment and the harmfulness of the conduct gives rise to the likelihood that it is not his conduct for which the

---

1. These statements of Herman's teachers are indicative:

    Mr. Moore: "He has done excellent work and earned consistently superior grades, averaging A's in both semesters of work."

    Mr. Gorgey: "In this course Mr. Herman demonstrated an outstanding ability to cope with the most complex questions of international politics. His excellent classwork and conscientious participation in discussion groups have earned him the highest possible grade without qualification."

    Mr. Blackstock: "He has been an excellent student, has shown a keen interest in the course, and marked intellectual potential."

    Mr. Clontz: "At the time of Mr. Herman's temporary suspension he had an 'A' average in my course. . . . I firmly believe that Mr. Herman is capable of maintaining a high level of academic achievement, and has the potential for sustained intellectual growth."

    Mr. Dean: "Tony was a solid 'B' student in my Biology 102 class . . . I feel he has the capability to distinguish himself intellectually."

2. As the majority point out, there was no contention that Herman was personally involved in removing the custodian and employees from the building or attempting to fasten the doors. At his hearing before the Board of Trustees, the University position, as stated by the attorney for the University, was that "Mr. Herman by failing to vacate the building at the University's request effectively interfered with their re-establishment of control over the building." App. at 59.

student is being disciplined, but the expression of ideas of which the university. disapproves.

The question is not whether he can be punished for his conduct. He can. However, where the prohibited conduct involves symbolic expression of ideas, I think that the First Amendment requires that the reasonableness of the punishment meted out by the university be weighed against the chilling effect that extraordinarily severe punishment for peaceful protest is bound to have on the exercise of First Amendment rights, not only by Herman, but by others as well. While I do not propose a sliding-scale approach to punishment in relation to the speech content of particular conduct, I think that we approach the point here where the balancing of interests necessitated when First Amendment rights are involved should result in the determination that the effect of expulsion on Herman's and other students' freedom of speech is too stifling to be permitted.

This case is further complicated by the particular sequence by which expulsion occurred. It was stipulated in the court below that Herman and others were requested by Assistant Dean of Men, Nix, to leave Russell House. "By this statement, *the university indicated that* those students failing to vacate the premises *would be temporarily suspended.*" (Emphasis added.) There was no threat of expulsion and, indeed, no mention of it. I am concerned that Herman may have been unfairly misled by the threat of *suspension* to assume that his peaceful disobedience would incur no greater sanction.

In Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), civil rights demonstrators were told that they could lawfully meet 101 feet from the courthouse steps but could not meet closer to the courthouse. When they were subsequently prosecuted for violation of the terms of a statute prohibiting such demonstrations "near" the courthouse, the convictions were held invalid because to sustain such convictions "would be to

sanction an indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State had clearly told him was available to him." *Cox, supra* at 571, 85 S.Ct. at 484.

Moreover, as the majority points out, there is a substantial equal protection problem if others have been reinstated and Herman has not. I would reverse and remand to the district judge with instructions to issue an injunction requiring the University to readmit Herman.