Michael J. SOHMER

v.

William J. KINNARD, et al.

Civ. No. Y–81–3264.

United States District Court,
D. Maryland.

Jan. 12, 1982.

---

vember, 1981, a student in good standing in his final year at the University of Maryland School of Pharmacy, and was scheduled to graduate in May, 1982. As part of his academic requirements, plaintiff was enrolled and participated in what is known as a Professional Experience Program, which is essentially a clinical program in which the student works at a pharmacy, under the supervision of a preceptor, to gain experience within the pharmacy profession. One of plaintiff's placements within the Professional Experience Program was at Weiner's Pharmacy, 3625 Old Court Road, Baltimore, Maryland, during July, 1981. Plaintiff, while working at Weiner's Pharmacy on one occasion, was noticed by Phillip Paul Weiner, his preceptor, to be working under what Mr. Weiner considered an impaired condition. Confronted with his observation, plaintiff stated that he had taken two Emprin with Codeine tablets, which he had received from his girlfriend, to alleviate a severe toothache and diarrhea. Weiner reported the incident to Marvin J. Oed, Associate Director of the University of Maryland School of Pharmacy.

On October 6, 1981, in an unrelated matter, plaintiff appeared before the District Court of Baltimore County on charges of violating the Controlled Dangerous Substances Laws of Maryland, to wit, theft and possession of cocaine. Based on a plea agreement, the theft charge was *nol prossed* and plaintiff pleaded guilty to the possession charge. Plaintiff pleaded guilty based on an agreed statement of facts, and the court placed plaintiff on probation before judgment, pursuant to Md.Ann.Code Art. 27 § 292(b).

Harold Buchman and Harvey S. Wasserman, Baltimore, Md., for plaintiff.

Frederick G. Savage, Asst. Atty. Gen. for the State of Md., and Christine Steiner, Staff Atty., Baltimore, Md., for defendants.

## MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

This matter comes before the Court on plaintiff's motion for preliminary injunction. Plaintiff was, until dismissed in No-

As a result of the incidents described above, Marvin Oed wrote to defendant Kinnard, Dean of the School of Pharmacy, on October 6, 1981, requesting that disciplinary action be taken against plaintiff. Pursuant to the disciplinary and grievance procedure, Oed's request for a disciplinary hearing against plaintiff was referred to the Student Discipline and Grievance Committee for investigation. Based on its investigation into the allegations, the Student Griev-

ance and Disciplinary Committee decided that it should conduct a formal committee hearing to determine whether plaintiff was guilty of the conduct as charged. At the hearing held on November 3, 1981, the committee found that plaintiff: (1) had functioned as an extern while impaired as a result of the improper use of two prescription drugs and (2) had illegally possessed cocaine. It recommended to the Faculty Assembly that plaintiff be suspended by the School of Pharmacy for a period of one year.

The Faculty Assembly, however, voted to dismiss plaintiff, and he appealed that decision to the defendant. In his appeal, plaintiff admitted to the illegal use and possession of drugs as charged in the grievance filed against him. While Dean Kinnard affirmed the dismissal, he advised plaintiff that such action was not irrevocable and suggested that plaintiff continue a urine screening program on a weekly basis, participate in a self-help program designed for health professionals, and involve himself with a group therapy program for at least six months. Plaintiff was advised that he should request reinstatement when there was sufficient evidence that these programs were successful.

Plaintiff sues for injunctive relief ordering him reinstated in the School of Pharmacy as of January 4, 1982, the beginning of the new school term. The hearing on the motion for preliminary injunction was postponed until January 8, 1982, after both sides agreed that, in the event the Court ruled in plaintiff's favor, the School would reinstate him retroactive to January 4.

THE LAW

The Fourth Circuit has established a four-part standard governing preliminary injunctions. In *North Carolina State Ports v. Dart Containerline*, 592 F.2d 749, 750 (4th Cir. 1979), the Court stated this standard as follows:

Summarized, the principles laid down in those cases are that in this circuit the trial court standard for interlocutory relief is the balance-of-hardship test. Four factors enter into the determination of whether to grant or to withhold interim injunctive relief: (a) plaintiff's likelihood of success in the underlying dispute between the parties; (b) whether plaintiff will suffer irreparable injury if interim relief is denied; (c) the injury to defendant if an injunction is issued; and (d) the public interest.

The Court also discussed the appropriate weight to be given these four factors:

There is a correlation between the likelihood of plaintiff's success and the probability of irreparable injury to him. If the likelihood of success is great, the need for showing the probability of irreparable harm is less. Conversely, if the likelihood of success is remote, there must be a strong showing of the probability of irreparable injury to justify issuance of the injunction. Of all the factors, the two most important are those of probable irreparable injury to the plaintiff if an injunction is not issued and likely harm to the defendant if an injunction is issued. If, upon weighing them, the balance is struck in favor of plaintiff, a preliminary injunction should issue if, at least, grave or serious questions are presented.

Since the key to the preliminary injunction standard is the balance of hardship, the Court turns first to that issue. It does not appear that plaintiff would suffer irreparable harm in the absence of an injunction. He has not been forever barred from completing his education at the School of Pharmacy. The Dean has informed him that he may apply for readmission to the program when he can demonstrate that he does not have a drug problem and that he can behave in accordance with the profession's Code of Ethics. Plaintiff claims that if he is not readmitted immediately his graduation will be delayed one year. However, the Dean states in his affidavit that plaintiff's graduation will be delayed even if he were readmitted as of January 4, 1982, as plaintiff seeks. Moreover, a mere delay in plaintiff's entry into the profession does not constitute irreparable harm. He may use that period to develop his professional skills, *see Bleicker v. Board of Trustees of Ohio*

*State, etc.*, 485 F.Supp. 1381, 1388 (S.D.Ohio 1980), and if plaintiff prevails at trial, money damages could compensate him for the loss of earnings due to the one year delay.

On the other hand, defendant would suffer significant harm if an injunction was issued. A school of pharmacy has a great stake in not permitting drug abuse among its students. The School's reputation and its ability to place students in clinical externships would be seriously jeopardized if the Court intervened and prevented the School from disciplining a student who has admitted that he has used a narcotic drug without a prescription and that he has had cocaine in his possession.

Since the balance of hardship weighs heavily in favor of defendant, plaintiff must make a strong showing that he is likely to succeed on the merits. *Blackwelder Furniture Co., Etc. v. Seilig Manufacturing Co.*, 550 F.2d 189, 195, 196 (4th Cir. 1977). Plaintiff has failed to do this.

In *Herman v. University of South Carolina*, 457 F.2d 902 (4th Cir. 1972), the Fourth Circuit affirmed *per curiam* and adopted the reasoning of the lower court opinion in *Herman v. University of South Carolina*, 341 F.Supp. 226 (D.S.C.1971). That court listed four procedural elements necessary to preserve due process and fairness in handling campus disciplinary proceedings:

1. The student must be advised, in advance of the hearing, [of] the grounds of the charges against him.

2. He is entitled to the names and a summary of the testimony of witnesses to be used against him, although he may not be necessarily entitled to be confronted by the witnesses at the hearing.

3. The student has a right to be heard in his own defense and to be present and present evidence on his behalf, although this right does not necessarily extend to the actual appearance before the ultimate legal authority to administer discipline.

4. No serious disciplinary action can be taken unless it is based upon substantial evidence.

*Id.* at 230–31.

This statement of the process due a student in a state school disciplinary proceeding is very similar to that in the leading Circuit Court opinion on the issue, *Dixon v. Alabama Board of Education*, 294 F.2d 150 (5th Cir. 1961), *cert. denied*, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961). That Court held that in order to provide the "rudimentary elements of fair play," the school must meet four requirements:

(1) The student must receive notice of the specific charges against him;

(2) There must be a hearing, at which the student may present a defense and either oral testimony or written affidavits of witnesses on his behalf; however, a "full-dress judicial hearing" is not required;

(3) The student should be given the names of the witnesses against him and a summary of the testimony each is expected to give; and

(4) If the hearing is not before the body that will make the ultimate disciplinary decision, then the hearing body should file a written report of its findings and should make this report available to the student. *Id.* at 158–59.

These requirements are greater than those set forth in *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). In that case, which involved ten-day suspensions from public high schools, the Court held that due process required only that the student be given notice of the charges against him, an explanation of the evidence the school authorities have and an opportunity to present his side of the study in an informal hearing. *Id.* at 581, 583, 95 S.Ct. at 739, 740. The Court ruled that such process would "provide a meaningful hedge against erroneous action," *id.* at 583, 95 S.Ct. at 740, and that the school authorities may, at their discretion, choose to allow the student to confront his accuser, present witnesses and cross-examine adverse witnesses.

**54**

*Id.* at 584, 95 S.Ct. at 741. Finally, the Court stated that in more difficult cases the student might be permitted counsel. *Id.* While the requirements of due process arguably should be greater in the case of dismissal from a graduate school, *Goss* indicates that due process in the setting of school disciplinary proceedings requires only that the rudiments of fair play be observed and does not require anything approaching a full-dress judicial hearing.

The process accorded plaintiff more than meets the requirements of *Herman* and *Dixon,* and the Court concludes that plaintiff is unlikely to be able to prove at trial on the merits that he did not receive due process.

Plaintiff argues he should have been allowed to be represented by counsel. While there are cases finding representation by counsel to be an element of due process in disciplinary cases, such a requirement was omitted in the list of due process requirements in *Herman* and *Dixon.* In fact, the Court in *Dixon* specifically held that the hearing need not be a "full-dress judicial hearing." *Id.* at 159. Moreover, the court in *Barker v. Hardway,* 283 F.Supp. 228, 237 (S.D.W.Va.), *aff'd,* 399 F.2d 638 (4th Cir. 1968), *cert. denied,* 394 U.S. 905, 89 S.Ct. 1009, 22 L.Ed.2d 217 (1979), specifically rejected a claim that due process required that a student be allowed to bring an attorney to a disciplinary proceeding.

Plaintiff contends that the School applied vague disciplinary rules *ex post facto.* The University of Maryland School of Pharmacy catalog for 1980–81 provides that "when the actions of a student are judged by competent authorities, using established procedures, to be detrimental to the interests of the University community, that person may be required to withdraw from the University." This rule was published well before plaintiff engaged in the two drug incidents in the summer of 1981. The standard "detrimental to the interests of the University community" is not vague. It cannot reasonably be said that a 24-year-old student in his last year at a school of pharmacy is not aware that the illegal use and possession of

narcotic drugs would violate the law and the Code of Ethics of his profession and would therefore be detrimental to the interests of the University. *See Williams v. Spencer,* 622 F.2d 1200 (4th Cir. 1980).

Plaintiff claims that the Student Grievance and Disciplinary Committee was biased against him by the receipt of letters containing hearsay evidence of plaintiff's involvement in drug incidents. However, the Committee's report clearly indicates that it did not rely upon those letters as a basis for its recommendation, and that the Committee had substantial evidence to support its recommendation.

Plaintiff claims defendant Kinnard was biased against him before Kinnard heard plaintiff's appeal. Kinnard denies by affidavit that he told plaintiff prior to hearing his appeal that he, Kinnard, did not want plaintiff to finish his last year at the School.

Plaintiff argues that the Committee should have made a transcript of the hearing. The Committee did forward to the ultimate decision-maker a written report of its findings and recommendations, as was required by *Dixon, supra,* 294 F.2d at 159. However, none of the student discipline cases suggests that a full transcript of the hearing is required.

Plaintiff contends that he was entitled to a full hearing before the Faculty Assembly, the body authorized to make the final decision on dismissal. A student's right to be heard does not necessarily extend to an appearance before the ultimate authority in the disciplinary process. *Herman, supra,* 341 F.Supp. at 230. Plaintiff had a full opportunity to present his defense to the Grievance Committee which made a recommendation to the Faculty Assembly. That hearing was sufficient to protect plaintiff's interests.

Plaintiff contends that it was not proper for the Committee to admit into evidence the agreed statement of facts which he entered into the court proceedings concerning his cocaine possession. However, the statute applies only in situations in which a defendant pleads guilty to or is found guilty

of the offense, so it was not improper for the Committee to rely on this agreed statement of facts as evidence of plaintiff's guilt. Moreover, plaintiff admitted to the Dean, the ultimate adjudicatory authority, that he was in possession of cocaine on the date in question.

Plaintiff's claim that the students on the Grievance Committee were not qualified to determine if plaintiff's actions violated the interests of the University community is preposterous, because any student can fathom the relationship between drug abuse and the interests of a School of Pharmacy.

Plaintiff's claim that a similarly situated student was treated differently is based on inaccurate information.

Plaintiff contends that the School of Pharmacy did not have authority to promulgate disciplinary rules. However, on June 20, 1969, the University of Maryland Board of Regents approved a judicial system for the University of Maryland, which provides that:

> "The [Special] Committee [to Study the Judiciary System of the University] considers that the judiciary organization and procedure of the professional schools of the University should be a matter to be regulated by these schools themselves. . . .

Plaintiff's Exhibit F at 2.

Finally, plaintiff argues that under Md. Ann.Code, Art. 41 § 244(a), (b) and (c), disciplinary procedures established by the University of Maryland are subject to the requirements of Maryland's Administrative Procedure Act. The Court need not address this issue, because, even if the APA does apply, plaintiff must seek judicial review in the circuit courts in Maryland, as provided for in Md.Ann.Code, Art. 41 § 255(b).

In conclusion, the Court finds that defendant would be more seriously harmed by the issuance of an injunction than plaintiff would be harmed by its nonissuance. Moreover, plaintiff has failed to show he is likely to prevail on the merits. Therefore, plaintiff is not entitled to a preliminary injunction.

Accordingly, for the reasons stated herein, it is this 12th day of January, 1982, by the United States District Court for the District of Maryland, ORDERED:

That the plaintiff's motion for a preliminary injunction BE, and the same IS, hereby DENIED.