**Christopher J. JAKSA, Plaintiff,**

v.

**The REGENTS OF the UNIVERSITY OF MICHIGAN, University of Michigan President Harold T. Shapiro, and Dean Eugene W. Nissen; all individually and in their official capacities, Defendants.**

Civ. A. No. 83–6284.

United States District Court,
E.D. Michigan, S.D.

Nov. 21, 1984.

Kurt Berggren, Ann Arbor, Mich., for plaintiff.

Roderick K. Daane, University of Michigan, Peter A. Davis, Ann Arbor, Mich., for defendants.

## MEMORANDUM OPINION

FEIKENS, Chief Judge.

Plaintiff, Christopher Jaksa, was suspended for one term from the University of Michigan for cheating on a final exam. Plaintiff argues that he was denied procedural due process, and brings this action under 42 U.S.C. § 1983 (1982) against the Regents of the University of Michigan, Harold Shapiro (University President), and Eugene Nissen (Assistant Dean of Student Academic Affairs). This case is currently before me on cross-motions for summary judgment. Two evidentiary hearings have been held. For reasons stated herein, plaintiff's motion for summary judgment is denied, and defendants' motion for summary judgment is granted.

## I. BACKGROUND

Plaintiff is currently enrolled at the University of Michigan. By letter dated April 30, 1982, plaintiff's statistics professor, Prof. Rothman, filed charges with the Academic Judiciary accusing plaintiff of cheating on his statistics final exam. Rothman brought these charges after receiving an anonymous telephone call from a student who said he saw plaintiff switch exam cover sheets, and submit his cover sheet with a classmate's exam. Rothman's inspection of the exams revealed that plaintiff's cover sheet was attached to another student's exam, though plaintiff denied having any knowledge of how this happened.

Before the University took any action on Prof. Rothman's charges, the following procedures were followed: Plaintiff was provided with a copy of Prof. Rothman's charges, and met several times to discuss these charges with Dean Nissen, Assistant Dean of Student Academic Affairs. Dean Nissen gave plaintiff the Manual of Procedure for the Academic Judiciary (Manual), and a hearing was held on June 16, 1982. After the hearing, a four-member panel consisting of two students and two professors unanimously found plaintiff guilty of cheating, and recommended a two-semester suspension. After seeking the advice of counsel, Jaksa wrote a letter to the Academic Judiciary Appeal Board seeking le-

niency. Jaksa confessed that his cheating was "a spur of the minute act [and] a glaring error in judgment." Plaintiff also found "it difficult to express in words [his] sincere regret and shame at having involved [himself] in this cheating incident." Apparently moved by this confession, the Appeal Board reduced Jaksa's penalty to a one-semester suspension.

Plaintiff argues that the proceedings against him were fundamentally unfair and that he was denied procedural due process in violation of the fourteenth amendment. Defendant argues that the procedural protections afforded plaintiff satisfied the requirements of the due process clause. I find that plaintiff was treated fairly, and that the University's procedures satisfied the fourteenth amendment.

## II. DISCUSSION

■ The fourteenth amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S.Const. amend. XIV, § 1. While it is not always clear when a constitutional claim has been raised, plaintiff's suspension from the University involves a sufficient "liberty" interest to entitle him to the guarantees of the fourteenth amendment. *Goss v. Lopez,* 419 U.S. 565, 575, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975) ("Liberty" interests implicated where high school student was suspended for 10 days since suspensions "could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment."); *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."). *See also Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiff may also have a "property" interest in continuing his education at the University of Michigan. *Goss,* 419 U.S.

at 574, 95 S.Ct. at 736. Whether plaintiff's interest is a "liberty" interest, "property" interest, or both, it is clear that he is entitled to the protection of the due process clause.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). While due process is a flexible concept and will vary with the facts of each case, the Supreme Court has articulated criteria for determining what process is due in a particular setting:

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally require consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976). *See also Frumkin v. Board of Trustees*, 626 F.2d 19 (6th Cir.1980).

In the context of school suspensions, the starting point is *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1974), where the Supreme Court considered the constitutional requirements for suspending a high school student for 10 days. After finding that a suspension from high school implicated a protected interest, the Court held that a student facing suspension "must be given *some* kind of notice and afforded *some* kind of hearing." *Goss*, 419 U.S. at 579, 95 S.Ct. at 738. To determine the sort of notice and hearing [1] to which a student is entitled, the Court balanced the student's interest in avoiding unfair or mistaken exclusion from the educational process against the school's interest in maintaining discipline.[2] In accommodating those competing interests, the Court held that in order to suspend a high school student for 10 days, he must be "given an opportunity to explain his version of the facts [after being] told what he is accused of doing and what the basis of the accusation is." *Goss*, 419 U.S. at 582, 95 S.Ct. at 740. The Court recognized that the due process clause affords high school students facing brief suspensions only "rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school." *Goss*, 419 U.S. at 581, 95 S.Ct. at 739–40. The Court, however, made it clear that its holding was limited to short suspensions, and that

1. The Supreme Court has repeatedly emphasized that these requirements, *notice and the opportunity to be heard*, are the fundamental requirements of the due process clause. *E.g. Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

2. *Goss* involved a suspension for disciplinary reasons. *Academic* suspensions or dismissals, by contrast, require only the barest procedural protections. *See Board of Curators v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978) (dismissal for academic reasons does not require a hearing). In this case, plaintiff was accused of cheating, an offense which cannot neatly be characterized as either "academic" or "disciplinary". The Supreme Court's reasoning in *Horowitz*, however, persuades me that cheating should be treated as a disciplinary matter.

In declining to impose a hearing requirement on a *medical school* in an academic dismissal case, the Court noted that academic dismissals involve "a judgment [that] is by its nature more subjective and evaluative than the typical factual questions presented in the average disciplinary decision." *Horowitz*, 435 U.S. at 90, 98 S.Ct. at 955. In this case, the proceedings against plaintiff primarily involved resolution of factual disputes, and there was little need for subjective judgment or evaluation. Further, dismissal for cheating requires greater procedural protection than academic dismissals since the former are more stigmatizing than the latter, and may have a greater impact on a student's future. *But see Corso v. Creighton University*, 731 F.2d 529, 532 (8th Cir.1984) (cheating on an exam is "clearly an academic matter"). Accordingly, I hold that plaintiff is entitled to the higher level of procedural protection guaranteed in school disciplinary proceedings.

"[l]onger suspensions or expulsions ... may require more formal procedures." *Goss*, 419 U.S. at 584, 95 S.Ct. at 741.

*Dixon v. Alabama State Board of Education*, 294 F.2d 150 (5th Cir.), *cert. denied*, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961), which the Supreme Court acknowledged as a "landmark decision," [3] bears a greater resemblance to this case. There, students were expelled from Alabama State College for disciplinary reasons.[4] After holding that due process requires a state university to give its students notice and the opportunity to be heard, the United States Court of Appeals for the Fifth Circuit articulated standards for the nature of the requisite notice and hearing:

> The notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the Board of Education. The nature of the hearing should vary depending upon the circumstances of the particular case. The case before us requires something more than an informal interview with an administrative authority of the college. By its nature, a charge of misconduct, as opposed to a failure to meet the scholastic standards of the college, depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses. In such circumstances, a hearing which gives the Board or the administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required. Such a hearing, with the attending publicity and disturbance of college activities, might be detrimental to the college's educational atmosphere and impractical to carry out. Nevertheless, the rudiments of an adversary proceeding may be preserved without encroaching upon the interests of the college.

*Dixon*, 294 F.2d at 158–59. *See also Slaughter v. Brigham Young University*, 514 F.2d 622, 625 (10th Cir.), *cert. denied*, 423 U.S. 898, 96 S.Ct. 202, 46 L.Ed.2d 131 (1975) (Due process satisfied where there "was an adequate hearing on the charge with a meaningful opportunity given to plaintiff to participate, to present his position, and to hear the witnesses presenting the facts they had knowledge of."); *Jones v. Snead*, 431 F.2d 1115, 1117 (8th Cir.1970) ("[P]rocedural due process must be afforded a student on the college campus 'by way of adequate notice, definite charge, and a hearing with opportunity to present one's own side of the case and with all necessary protective measures.' ") (Quoting *Esteban v. Central Missouri State College*, 415 F.2d 1077, 1089 (8th Cir.1969), *cert. denied*, 398 U.S. 965, 90 S.Ct. 2169, 26 L.Ed.2d 548 (1970)).

Although plaintiff was given notice of the charges against him and a meaningful opportunity to present his version of the facts to an impartial hearing panel, he argues that the University's procedures were constitutionally defective on several grounds. After reviewing the procedures which the University followed in this case, and the case law applying the due process clause to school disciplinary proceedings, I conclude that plaintiff received more procedural protection than the due process clause requires. Plaintiff's argument seems to rest largely on an unstated view that a university may not discipline its students without providing a full-scale adversarial proceeding such as those afforded criminal defendants. Since this view of the University's constitutional obligations neither comports with the decisional law, nor is a reasonable accommodation of plaintiff's and the University's interest, I reject this expansive reading of the due process clause.

---

**3.** *Goss*, 419 U.S. at 576 n. 8, 95 S.Ct. at 737 n. 8.

**4.** The College expelled plaintiffs, who were black, because they requested service at a white lunch counter in violation of Alabama law, and they participated in several mass demonstrations.

■ In analyzing plaintiff's due process argument that he is entitled to a variety of formal procedural safeguards in a suspension hearing, it is important to keep in mind that the primary purpose of a university is to educate its students. "A school is an academic institution, not a courtroom or administrative hearing room." *Board of Curators v. Horowitz*, 435 U.S. 78, 88, 98 S.Ct. 948, 954, 55 L.Ed.2d 124 (1978). Similarly, a school disciplinary proceeding is not a criminal trial, nor is a student accused of cheating entitled to all the procedural safeguards afforded criminal defendants. *Jenkins v. Louisiana State Board of Education*, 506 F.2d 992, 1000 (5th Cir.1975); *Betts v. Board of Education*, 466 F.2d 629, 633 (7th Cir.1972); *Esteban*, 415 F.2d at 1089–90. Formalizing hearing requirements would divert both resources and attention from the educational process. *See Jackson v. Dorrier*, 424 F.2d 213, 217 (6th Cir.), *cert. denied*, 400 U.S. 850, 91 S.Ct. 55, 27 L.Ed.2d 88 (1970). (Maintaining a relationship between schools, parents and students "in an adversary atmosphere and according [to] the procedural rules to which we are accustomed on a court of law would hardly best serve the interests of any of those involved." (quoting District Judge Gray)). While a university cannot ignore its duty to treat its students fairly, neither is it required to transform its classrooms into courtrooms.

■ Considering first the adequacy of the safeguards which the University provided plaintiff, there is no question that plaintiff had sufficient notice of the charges against him and a meaningful opportunity to prepare for the hearing. Plaintiff received a copy of Prof. Rothman's letter to the Academic Judiciary accusing him of cheating. That letter specified that plaintiff was suspected of attaching his cover sheet to another student's exam. Dean Nissen met twice with plaintiff to discuss these charges and the pending hearing. At the first of these meetings, Dean Nissen gave plaintiff the Manual of Procedures for the Academic Judiciary and explained to him the procedures which the University follows at disciplinary hearings. Transcript of Evidentiary Hearing, June 1, 1984 (Transcript) at 79–80 (testimony of Dean Nissen). The hearing was held approximately six weeks after plaintiff was advised of the charges against him, and therefore, he had sufficient time to prepare his defense. Accordingly, plaintiff's notice of the charges was constitutionally sufficient.

■ Plaintiff's hearing also complied with the requirements of due process. Prof. Rothman presented his evidence to the panel, and plaintiff read a response. Plaintiff had the opportunity to present evidence to support his version of the facts, and to cross-examine Prof. Rothman. Following both sides' presentations, there was a round-table discussion in which plaintiff participated. Although plaintiff claims that he was continually interrupted at the hearing and was unable to present his case effectively, I find that the record does not support this contention. Dr. Lincoln Faller, who was a member of the Academic Judiciary panel assigned to this case, testified that plaintiff was not interrupted when he read his prepared statement to the panel, nor was he cut off during the round-table discussion. Transcript at 50, 70–71. While Prof. Easter, the other faculty member of the panel, terminated the hearing[5] after plaintiff was asked if he had anything further to add, the testimony indicates that plaintiff's comments at that point were repetitive. *Id.* The panel had an obligation to listen to plaintiff's version of the facts, but this obligation does not extend to listening to plaintiff repeat the same explanation several times. Accordingly, I find that plaintiff had a meaningful opportunity to present his side of the story to the panel.

---

5. The hearing was adjourned until the following day for the sole purpose of verifying the signature of a student who signed a statement on plaintiff's behalf. Although plaintiff was not present at this session, he knew that the hearing was reconvened for the sole purpose of verifying the signature.

The hearing panel consisted of two professors and two students. The panel unanimously found plaintiff guilty of cheating. There is nothing in the record to indicate that the panel's decision was anything less than impartial or fair.

 Despite these protections, plaintiff argues that the University's procedures violated the due process clause. First, plaintiff argues that both the composition of the panel and the timing of the hearing violated his due process rights since both violated procedures specified in the Manual. Specifically, the Manual provides that a hearing panel must hear a case within six weeks of the date the charges are filed or the Administrative Board shall assume jurisdiction and schedule a hearing within six weeks. Here, the hearing was held six and a half weeks from the date of Prof. Rothman's letter charging plaintiff with cheating.[6] The Manual also provides that the student government shall appoint the student members of the Academic Judiciary. In this case, because plaintiff's hearing was held during the summer when most students leave Ann Arbor, Dean Nissen appointed two students to the Academic Judiciary.[7]

 I cannot agree with plaintiff that these procedural irregularities rise to the level of constitutional violations. A state agency's disregard of its own regulation is a constitutional deprivation only where there is an independent due process right to the procedure contained in the agency's rule:

It is not every disregard of its regulations by a public agency that gives rise to a cause of action for violation of constitutional rights. Rather, it is only when the agency's disregard of its rules results in a procedure which itself impinges upon due process rights that a federal court should intervene in the decisional processes of state institutions.

*Bates v. Sponberg*, 547 F.2d 325, 329–30 (6th Cir.1976). *See also Bills v. Henderson*, 631 F.2d 1287, 1298 (6th Cir.1980) ("[P]rocedural rules created by state administrative bodies cannot, of themselves, serve as a basis for a separate protected liberty interest."). In this case, plaintiff has no independent due process right to a hearing within six weeks of the date charges were brought against him. Nor does he have an independent due process right to have the student government select the two student members of his hearing panel. These procedures, moreover, even though violative of the Manual, in no way deprived plaintiff of a fair hearing. Accordingly, I find that in this case, noncompliance with the Manual of Procedure does not rise to the level of a constitutional deprivation.

 Second, plaintiff argues that he was denied due process because he was not permitted to bring a representative to the hearing. Plaintiff does not contend that he has a constitutional right to an attorney; rather, he argues that it is fundamentally unfair to deprive him of the assistance of *any* representative, such as a student-attorney, to aid in the presentation of his

---

6. Prof. Rothman's letter to Dean Nissen accusing plaintiff of cheating is dated April 30, 1982, and the hearing was held on June 16, 1982, six weeks and five days later. The University claims that Prof. Rothman's letter to Dean Nissen was hand-delivered on May 6, 1982, (Defendant's answer to interrogatory No. 12), and that the hearing was timely since it was held within six weeks of the time the letter was delivered to the Dean. Plaintiff argues that the University should be held to the date of Rothman's letter. I need not resolve this dispute since I hold that even if the hearing was held six weeks and five days after the plaintiff was charged with cheating, this tardiness did not constitute a denial of due process.

7. Plaintiff's complaint also states a cause of action for breach of contract: "The defendants, by articulating to plaintiff that he would be tried and receive a hearing pursuant to the Manual of Procedures, then in failing to do so, breached the contract, express and implied, with the plaintiff." Complaint at ¶ 40. At the final hearing on the cross-motions for summary judgment, plaintiff's counsel noted that due process lies at the heart of this case. Nonetheless, I rule that this contract claim is without merit. Without exploring whether such a contract exists, and if so, what the nature of the rights and obligations are under such a contract, I find that the alleged breaches are not material.

case. Plaintiff relies primarily on *Henson v. The Honor Committee*, 719 F.2d 69, 73 (4th Cir.1983). There, the Court noted that the right to have a student lawyer represent an accused student at all critical stages of the proceedings was among the "impressive array of procedural protections" which the University afforded its students. Although the courts are split on the issue of the right to representation in student disciplinary proceedings,[8] I am not persuaded that plaintiff had a constitutional right to be represented at his suspension hearing.

The proceedings against plaintiff in this case were not unduly complex, nor was plaintiff unguided through the Academic Judiciary proceedings. The Manual of Procedures for the Academic Judiciary is written in plain English, and is comprehensible to the average college student. Plaintiff spoke with Dean Nissen twice concerning his case, and had the benefit of Dean Nissen's responses to his questions. Significantly, the University did not proceed against plaintiff through an attorney or other representative. Had an attorney presented the University's case, or had the hearing been subject to complex rules of evidence or procedure, plaintiff may have had a constitutional right to representation. But here, Prof. Rothman presented the case against plaintiff, and there was nothing mysterious about the Academic Judiciary proceedings. Plaintiff was able to present his case effectively to the Academic Judiciary, and suffered no disadvantage due to the lack of representation at the hearing.

■ Third, plaintiff argues that his due process rights were violated because the University failed to make a transcript or recording of the hearing. The only record of the hearing is handwritten notes taken by one of the student members of the Academic Judiciary. Contrary to plaintiff's argument, I am not persuaded that the due process clause requires the University to provide a verbatim transcript of the hearing. While this case illustrates the wisdom of recording such hearings, it is clear that the Constitution does not impose such a requirement. *Whitfield v. Simpson*, 312 F.Supp. 889, 894 (E.D.Ill.1970); *Due v. Florida Agricultural and Mechanical University*, 233 F.Supp. 396, 403 (N.D.Fla. 1963).

■ Plaintiff next argues that he was deprived his due process right to cross-examine his accuser. Plaintiff argues that his real accuser was not Prof. Rothman, but the anonymous student who called Rothman and claimed to have seen plaintiff attach his cover sheet to another student's exam. I disagree with plaintiff that his real accuser was the anonymous student. It was in Prof. Rothman's class that plaintiff cheated, and it was Rothman who determined that plaintiff's cover sheet was attached to another student's exam. The fact that Rothman undertook his investigation based on an anonymous phone call does not alter his status as plaintiff's accuser. Plaintiff, moreover, again misconstrues the nature of a school disciplinary proceeding. The Constitution does not confer on plaintiff the right to cross-examine his accuser in a school disciplinary proceeding. *Boykins v. Fairfield Board of Education*, 492 F.2d 697, 701–02 (5th Cir.1974), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1350, 43 L.Ed.2d 438 (1975) ("It well may be that all *Morrissey* [*v. Brewer*] contemplates [is] ... a right to confront and cross-examine such adverse witnesses *as appear* ..."); *Winnick v. Manning*, 460 F.2d 545, 549 (2d Cir.1972) ("The right to cross-examine wit-

---

8. *Compare Givens v. Poe*, 346 F.Supp. 202 (W.D. N.C.1972) (Due process clause requires representation by counsel at suspension hearings.) *and Esteban v. Central Missouri State College*, 277 F.Supp. 649 (W.D.Mo.1967), *aff'd.* 415 F.2d 1077 (8th Cir.1969), *cert. denied*, 398 U.S. 965, 90 S.Ct. 2169, 26 L.Ed.2d 548 (1970) (Due process clause requires representation by counsel at a suspension hearing.) *with Madera v. Board*

of Education, 386 F.2d 778 (2d Cir.1967), *cert. denied*, 390 U.S. 1028, 88 S.Ct. 1416, 20 L.Ed.2d 284 (1968) (No right to counsel at a conference relating to the suspension of a student) *and Everett v. Marcase*, 426 F.Supp. 397 (E.D.Pa. 1977) (Due process does not require the presence of an attorney at a formal hearing on disciplinary transfers).

nesses generally has not been considered an essential requirement of due process in school disciplinary proceedings."); *Dixon v. Alabama State Board of Education,* 294 F.2d at 159 (Due process does not require "a full-dress judicial hearing, with the right to cross-examine witnesses . . . ."). *Dillon v. Pulaski County Special School District,* 468 F.Supp. 54 (E.D.Ark.1978), *affd.* 594 F.2d 699 (8th Cir.1979), which plaintiff relies on, stands only for the limited proposition that a student facing suspension may have the "right to confront *the school official or teacher* having primary knowledge of the facts relevant to the disciplinary proceeding." *Dillon,* 468 F.Supp. at 58 (emphasis added). In fact, that Court recognized that "the need for anonymity of student accusers, who might otherwise be the victim of reprisals from fellow students, could prevail over the right to confrontation." *Dillon,* 468 F.Supp. at 58. Therefore, I hold that plaintiff had no due process right to confront the anonymous student who reported plaintiff's cheating. I further find that the University did not deprive plaintiff of his right, if any, to cross-examine Prof. Rothman.

■ Plaintiff further argues that he was deprived of his due process rights because the Academic Judiciary failed to provide a detailed statement of reasons explaining its decision.[9] Five days after the panel reached its decision, plaintiff learned that he had been found guilty of cheating when he telephoned Dean Nissen. Shortly thereafter, plaintiff received a letter from the Academic Judiciary stating that he had been found "guilty of cheating in Statistics 402 as a result of the case presented by Professor Rothman."

In analyzing the need for a detailed statement of reasons in light of the criteria outlined in *Morrissey v. Brewer,* I am not persuaded that plaintiff has a constitutional right to such a statement. I agree with the reasoning of *Bleicker v. Board of Trustees,* 485 F.Supp. 1381, 1387–88 (S.D. Ohio 1980):

Plaintiff's private interest in continuing her education without interruption is assumed, for the purpose of this analysis, to be an important one. The fiscal and administrative burdens on the government . . . to provide the omitted protections [including a detailed reasons statement] would be minimal . . . .

The critical inquiry, then, is to be found in the second prong of *Mathews:* the risk that the procedures used would erroneously deprive plaintiff of her interest, and the probable protective value of the additional safeguards. Defendants would be well advised to adopt the additional procedures as a matter of routine, for under certain circumstances these relatively inexpensive safeguards might contribute significantly to protecting an important private interest. The Court believes, however, that the proposed procedures would have contributed little towards reducing the risk of error in plaintiff's case. [Footnotes omitted].

*See also Herman v. University of South Carolina,* 341 F.Supp. 226, 232 (D.S.C. 1971), *affd.* 457 F.2d 902 (4th Cir.1972) (University's procedures adequately protected student's interests. "There is no requirement in law or reason that suggests or demands the Board to issue written findings of fact or conclusions of law similar to those required by Rule 52 of the Federal Rules of Civil Procedure."). *But see Morale v. Grigel,* 422 F.Supp. 988, 1004 (D.N. H.1976) (Where student suspended for possession of marijuana, "written reasons [for the suspension] are constitutionally mandated.").[10]

---

**9.** Plaintiff also argues that this failure by the University breached its contract with plaintiff insofar as the Manual of Procedures provides that "the Hearing Board shall provide each party with a written statement containing the decision rendered, and the relevant reasons." As discussed at note 7, *supra,* I find that there is no merit to this contract claim. Even if the Aca-

demic Judiciary's letter to plaintiff informing him of the Panel's decision is not as detailed as the Manual contemplates, I find that this breach is not material.

**10.** *Morale* relies on two Supreme Court cases to support its holding that written reasons for a suspension are constitutionally mandated. In

Here, plaintiff had written notice of the specific charges against him and, due to the nature of the accusation, the reasons for the panel's decision were obvious. Based on the undisputed fact that plaintiff's cover sheet was attached to another student's exam, the testimony of Prof. Rothman, and the hearing testimony indicating that plaintiff found himself in a precarious position at the end of that semester, the panel apparently disbelieved plaintiff's version of the facts and concluded that he attached his cover sheet to another student's exam. Articulating the obvious to plaintiff would not reduce a risk of erroneous deprivation of plaintiff's rights.

In viewing the totality of the circumstances surrounding this case, I am persuaded that plaintiff was afforded his due process rights. There is no question that plaintiff's interest in uninterrupted education and remaining free from stigma are weighty. I am convinced, however, that the procedures followed by the University sufficiently minimized the risk of an erroneous deprivation of plaintiff's liberty and property interests. Plaintiff received adequate notice of the charges against him. He was given a copy of the Manual of Procedure for the Academic Judiciary in order to enable him to prepare for his hearing. Plaintiff also had the opportunity to discuss his case and hearing with the Assistant Dean of Student Academic Affairs. At the hearing itself, plaintiff read a prepared statement to the panel, and participated in an informal discussion of his case. Thus, he was given a meaningful opportunity to present his version of the facts. The additional procedures to which plaintiff claims he was entitled are either too cumbersome and intrusive into the educational process, or would not reduce significantly the risk of an erroneous deprivation of rights.

III. CONCLUSION

Since plaintiff was threatened with the loss of a protected interest, he was entitled to the protection of the due process clause. The due process clause requires that plaintiff be given adequate notice of the charges against him, and a meaningful opportunity to be heard. The specific procedures required in any given circumstances depend on the nature of the interests affected, the risk of an erroneous deprivation of that interest through the procedures used, and the burdens on the state of additional or substitute procedures. Balancing these factors in this case, I conclude that plaintiff has been afforded his due process rights.

An appropriate order may be submitted.

*Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court held that an inmate subject to disciplinary actions must be provided a written statement explaining the reasons for such actions. In *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct.2593, 2604, 33 L.Ed.2d 484 (1972), the Court held that a parole board must provide a "written statement by the factfinders as to the evidence relied on and reasons for revoking parole." These cases are distinguishable because they involve the rights of prisoners and parolees, whose liberty interests in their freedom and conditions of confinement are greater than a student's interest in uninterrupted education and remaining free from the stigma of being convicted of cheating on an exam. As noted above, the due process clause does not require that all the procedural safeguards mandated in the criminal/prisoner context must apply in school suspension cases.